## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| TECHNOLOGY RISK RETENTION GROUP, INC., an Arizona corporation, CORGI INSURANCE SERVICES, INC., a Delaware corporation,<br><br>*Plaintiffs,*<br><br>*v.*<br><br>VOUCH, INC., a Delaware corporation, VOUCH SPECIALTY INSURANCE SERVICES, LLC, a Delaware limited liability company, VOUCH US INSURANCE SERVICES HOLDINGS, LLC, a Delaware limited liability company, VOUCH RISK MANAGEMENT SERVICES, LLC, a Delaware limited liability company, KELLY WULFF, an individual, AUGMENTA ADVISORY, LLC, a Delaware limited liability company,<br><br>*Defendants.* | C.A. No. 1:26-cv-00426-RGA |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION

June 4, 2026

OF COUNSEL:

KEKER, VAN NEST & PETERS LLP
Warren A. Braunig
Cody Gray
Jacqueline Concilla
Michaela Firmage
633 Battery Street
San Francisco, CA 94111
(415) 391-5400
wbraunig@keker.com
cgray@keker.com
jconcilla@keker.com
mfirmage@keker.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Defendants Vouch, Inc., Vouch Specialty Insurance Services, LLC, Vouch US Insurance Services Holdings, LLC, Vouch Risk Management Services, LLC, Kelly Wulff, and Augmenta Advisory, LLC*

6207582

**TABLE OF CONTENTS**

                                                                                              **Page**

I.      NATURE AND STAGE OF THE PROCEEDINGS ..........................................................1

II.     INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................................1

III.    STATEMENT OF FACTS ............................................................................................2

        A.      The use of Corgi's website is governed by Terms of Use that contain a
                broad and mandatory arbitration agreement. ............................................2

        B.      The Terms of Use require informal dispute resolution before filing a
                dispute. ......................................................................................................4

        C.      Corgi filed this lawsuit in federal court without participating in the
                informal dispute resolution process and in violation of the Arbitration
                Agreement. ................................................................................................5

IV.     LEGAL STANDARD ..................................................................................................6

V.      ARGUMENT ..............................................................................................................6

        A.      The Court should compel arbitration of Corgi's claims. ...........................6

                1.      Corgi's Arbitration Agreement is valid, enforceable, and broad. ................6

                2.      Corgi's Arbitration Agreement covers all of Corgi's claims. .......................8

                3.      Even if there were a dispute about whether Corgi's claims are
                        arbitrable, the Terms of Use delegate that issue to the arbitrator. .............11

                4.      Corgi's arbitration agreement applies to its claims against all
                        defendants. ..................................................................................12

                        a.      Augmenta may compel arbitration of Corgi's claims. ...................13

                        b.      The Vouch Defendants may compel arbitration of Corgi's
                                claims. ................................................................................13

                        c.      The Vouch Defendants may compel arbitration because
                                Corgi alleges the Vouch Defendants and Augmenta are
                                alter egos. ..........................................................................14

                        d.      The Vouch Defendants may compel arbitration under the
                                doctrine of equitable estoppel. .........................................15

                                i.      Corgi's claims against the Vouch Defendants are
                                        intertwined with the Terms of Use. ..................................16

                                ii.     Corgi alleges concerted misconduct between
                                        Defendants. ..............................................................17

i

B.     The Court should stay this case pending arbitration. ..............................................19

C.     Defendants are entitled to recover their attorneys' fees and costs associated with this motion. ....................................................................................19

VI.    CONCLUSION ...........................................................................................................20

6207582

**Federal Cases**

*Arigna Tech. Ltd. v. Longford Cap. Fund III LP*,
    2024 WL 2848224 (D. Del. June 5, 2024)..................................................................................14

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)............................................................................................................13

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..............................................................................................................6

*CAP Diagnostics, LLC v. Emeritus Med. Tech. LLC*,
    2023 WL 8351561 (C.D. Cal. Oct. 25, 2023)........................................................................18

*Carter v. Spiegel*,
    2022 WL 126303 (N.D. Cal. Jan. 13, 2022) ..........................................................................17

*Christian v. Pressed Juicery, Inc.*,
    2021 WL 4771801 (C.D. Cal. Apr. 23, 2021) .........................................................................12

*Colon v. Conchetta, Inc.*,
    2017 WL 2572517 (E.D. Pa. June 14, 2017)...........................................................................14

*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) ............................................................................................8, 9

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..............................................................................................................6

*Dohrmann v. Intuit, Inc.*,
    823 F. App'x 482 (9th Cir. 2020) ..........................................................................................8

*E. Hedinger AG v. Brainwave Sci., LLC*,
    363 F. Supp. 3d 499 (D. Del. 2019)..........................................................................7, 9, 11, 16

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates.,*
    *S.A.S.*,
    269 F.3d 187 (3d Cir. 2001)...................................................................................................13

*Epic Sys. Corp v. Lewis*,
    584 U.S. 497 (2018)..............................................................................................................6

*Franklin v. Cmty. Reg'l Med. Ctr.*,
    998 F.3d 867 (9th Cir. 2021) ...........................................................................................15, 17

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*,
    716 F.3d 764 (3d Cir. 2013).............................................................................................6, 15

6207582

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)......................................................................................................6, 9, 11

*Herrera v. Cathay Pac. Airways Ltd.*,
   104 F. 4th 702 (9th Cir. 2024) ...................................................................................15, 17

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) ........................................................................................18

*Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*,
   2016 WL 6082415 (N.D. Cal. Oct. 18, 2016).................................................................13

*Marmet Health Care Ctr., Inc. v. Brown*,
   565 U.S. 530 (2012)..........................................................................................................6

*Michael Yadegari et al v. Ford Motor Co. et al*,
   2023 WL 11067049 (C.D. Cal. Dec. 20, 2023) ..............................................................14

*Mundi v. Union Sec. Life Ins.*,
   555 F.3d 1042 (9th Cir. 2008) ........................................................................................14

*Murphy v. DirecTV, Inc.*,
   724 F.3d 1218 (9th Cir. 2013) ........................................................................................16

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)..............................................................................................3

*Nutanix, Inc. v. Tessell, Inc.*,
   2025 WL 793652 (N.D. Cal. Mar. 12, 2025)..................................................................17

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010)..........................................................................................................11

*Sanders v. Swift Transp. Co. of Ariz., LLC*,
   843 F. Supp. 2d 1033 (N.D. Cal. 2012) ..........................................................................17

*Sanum Inv. Ltd. v. San Marco Capital Partners LLC*,
   263 F. Supp. 3d 491 (D. Del. 2017).................................................................................18

*Singh v. Uber Techs., Inc.*,
   67 F.4th 550 (3d Cir. 2023) .......................................................................................7, 11

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)........................................................................................................19

*Turing Video Tech., Inc. v. AGI7 Inc.*,
   2025 WL 579190 (N.D. Cal. Feb. 21, 2025) .............................................................17, 18

iv

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
    962 F. Supp. 2d 1172 (N.D. Cal. 2013) ....................................................................16

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022)....................................................................................................6

*Weiner v. Evolve Bank & Trust*,
    2026 WL 483040 (D. Del. Feb. 20, 2026)........................................................19, 20

*Zephyr Fluid Sols., LLC v. Scholle IPN Packaging, Inc.*,
    2023 WL 1795798 (D. Del. Feb. 7, 2023) ................................................................13

*Zirpoli v. Midland Funding, LLC*,
    48 F.4th 136 (3d Cir. 2022) .....................................................................................11

**State Cases**

*250ok, Inc. v. Message Sys., Inc.*,
    2021 WL 225874 (Del. Ch. Jan. 22, 2021)...............................................................10

*Goldman v. KPMG, LLP*,
    173 Cal. App. 4th 209 (2009) ...................................................................................16

*James & Jackson, LLC v. Willie Gary, LLC*,
    906 A.2d 76 (Del. 2006) ...........................................................................................12

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
    817 A.2d 149 (Del. 2002) ...........................................................................................7

*Vichi v. Koninklijke Philips Elecs., N.V.*,
    85 A.3d 725 (Del. Ch. 2014)......................................................................................13

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
    2006 WL 2473665 (Del. Ch. Aug. 22, 2006) ...........................................................15

**Federal Statutes**

9 U.S.C. § 1......................................................................................................................6

9 U.S.C. § 2......................................................................................................................7

6207582

## I.   NATURE AND STAGE OF THE PROCEEDINGS[1]

Plaintiffs Corgi Insurance Services, Inc. and Technology Risk Retention Group, Inc. ("TRRG") (collectively, "Corgi") filed their complaint against Vouch, Inc., Vouch Specialty Insurance Services, LLC, Vouch US Insurance Services Holdings, LLC, Vouch Risk Management Services, LLC, (collectively, the "Vouch Entity Defendants"), Kelly Wulff ("Ms. Wulff" and together with the Vouch Entity Defendants, the "Vouch Defendants"), and Augmenta Advisory, LLC ("Augmenta") on April 14, 2026. *See* D.I. 1 ("Compl.").[2] Defendants now move to compel Corgi's claims to arbitration and simultaneously move to dismiss. The motion to compel arbitration should be decided first because the Court does not need to reach the motion to dismiss if it grants the motion to compel arbitration.

## II.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case should have been brought in arbitration. Corgi jointly accuses six defendants of acting in concert to violate Corgi's website Terms of Use and thereby gain access to supposed Corgi "trade secrets." The claims are legally spurious and factually untrue. Corgi brought this lawsuit—its third against a competitor in the past year—to stifle competition, not to protect intellectual property. But, in any event, this Court is the wrong forum for the parties to press their respective claims and defenses. Every claim in this case derives from Defendants' allegedly improper access to Corgi's website in February 2026. The Terms of Use governing that website (which, notably, Corgi did not attach to its Complaint) include sweeping and mandatory arbitration language requiring that "any dispute between you and any of the Company Parties

---

[1] Unless otherwise noted, internal quotation marks, alterations, and citations have been omitted, and all emphases have been added.

[2] Corgi initially named Vouch Insurance Services, LLC (n/k/a Corix Insurance Services, LLC) as a defendant but dismissed that party on April 21, 2026. D.I. 13.

6207582

*relating in any way to the Site, the services offered on the Site ('the Services') or these Terms will be resolved by binding arbitration, rather than in court.*" Courts in this district frequently apply broad arbitration provisions like this one to compel arbitration of all claims that relate to the contractual terms. And, because Corgi invokes its contract to assert claims against all defendants—and accuses them of acting in concert—the arbitration provision extends to Corgi's claims against all defendants under the doctrines of alter ego and equitable estoppel. Corgi does not get to have it both ways: it may not exercise the privilege of invoking the contract against Defendants and then ignore the provisions it doesn't want to follow. The Court should compel arbitration of all claims against all Defendants and otherwise stay this litigation.

Corgi's disregard for its own Terms of Use and race to the courthouse, which was accompanied by a media campaign publicizing its Complaint, is problematic for a second reason. The Terms specify that if a party must go to court to obtain an order compelling arbitration under the Terms, that party "shall have the right to collect" its attorneys' fees and costs "incurred in securing an order compelling arbitration." Corgi also violated a mandatory Informal Dispute Resolution provision in the Terms, which is supposed to act as a condition precedent to commencing arbitration. The Terms state that a party who fails to follow the Informal Dispute Resolution process is once again liable for fees and costs. The Court should accordingly order Corgi to pay all of Defendants' fees and costs associated with this motion.

## III.   STATEMENT OF FACTS

### A.   The use of Corgi's website is governed by Terms of Use that contain a broad and mandatory arbitration agreement.

Corgi Insurance Services, Inc. "operates a technology-enabled commercial insurance platform at www.corgi.insure, offering proprietary insurance products" to technology companies and startups. Compl. ¶¶ 6, 19. Corgi's online platform is accessible through its publicly-available

6207582

website, which is governed by Corgi's "Website Terms of Use, Version 1.0, effective January 7, 2026" ("Terms of Use" or "Terms"). Compl. ¶ 60; *see also* Ex. A at 1 (Terms of Use).[3] The Terms state that, "by accessing or using the Site, you are accepting these terms (on behalf of yourself or the entity that you represent)." Ex. A at 1. Corgi avers that its Terms "constitute a binding contract." Compl. ¶ 60.[4]

On the very first page of the Terms, in bold capital letters, Corgi advises that: "SECTION 10.2 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION." Ex. A at 1 (emphasis in original). Section 10.2(a) provides, in turn, that "*any dispute between you and any of the Company Parties relating in any way to the Site, the services offered on the Site (the 'Services') or these Terms will be resolved by binding arbitration, rather than in court.*" *Id.* at 5 (§ 10.2(a)). The Terms define "Company Parties" to include Corgi Insurance Services, Inc., "its parent companies, subsidiaries, affiliates, successors and assigns and all of their respective officers, directors, employees, agents, and representatives." *Id.* at 5 (§ 10.2). Plaintiff TRRG is an affiliate—it "underwrites . . . commercial general liability policies distributed through Corgi's platform," Compl. ¶ 20—and is thus a "Company Party" under the Terms.[5]

---

[3] Corgi did not attach its Terms of Use, but they are incorporated by reference in the Complaint and Defendants attach them here as Exhibit A.

[4] The Terms of Use appear to be a browsewrap agreement. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016) (explaining difference between browsewrap and clickwrap agreements). For purposes of this motion, in light of the allegations, Defendants assume the contract is valid.

[5] Indeed, TRRG itself asserts a claim for breach of the Terms of Use, Compl. ¶¶ 59–64, confirming that it considers itself a party to the agreement containing the Arbitration Agreement.

6207582

The arbitration provision is governed by the Federal Arbitration Act and calls for administration by JAMS. Ex. A at 6–7 (§ 10.2(c)). The Terms provide that "[t]he arbitrator shall have exclusive authority to resolve all disputes subject to arbitration hereunder including, without limitation, any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement or any portion of the Arbitration Agreement." *Id.* at 7 (§ 10.2(d)). Section 10.2(e) further confirms that both "you and the Company Parties hereby waive any constitutional and statutory rights to sue in court." *Id.* at 7 (§ 10.2(e)).

**B.      The Terms of Use require informal dispute resolution before filing a dispute.**

Under the Terms, both Corgi and its website visitors "agree that before either party commences arbitration against the other [], we will personally meet and confer telephonically or via videoconference, in a good faith effort to resolve informally any Dispute covered by this Arbitration Agreement." Ex. A at 6 (§ 10.2(b)). The "party initiating a Dispute must give notice to the other party in writing of its intent to initiate an Informal Dispute Resolution Conference[]," which shall then occur "within 45 days." *Id.* "Engaging in the Informal Dispute Resolution Conference is a condition precedent and requirement that must be fulfilled before commencing arbitration." *Id.* To promote compliance, "[t]he prevailing party in any court action relating to whether either party has satisfied any condition precedent to arbitration, including the Informal Dispute Resolution Process, is entitled to recover their reasonable costs, necessary disbursements, and reasonable attorneys' fees and costs." *Id.* at 8 (§ 10.2(g)). Likewise, if either party "need[s] to invoke the authority of a court of competent jurisdiction to compel arbitration, then the party that obtains an order compelling arbitration in such action shall have the right to collect from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing an order compelling arbitration." *Id.*

4

6207582

> **C.      Corgi filed this lawsuit in federal court without participating in the informal dispute resolution process and in violation of the Arbitration Agreement.**

Despite the sweeping Arbitration Agreement in its own Terms of Use, Corgi filed this lawsuit in federal court on April 14, 2026. *See* Compl. at 1. Before doing so, Corgi did not give notice "in writing of its intent to initiate an Informal Dispute Resolution Conference," Ex. A at 6 (§ 10.2(b)); or "provide [any] party with a request for arbitration," *id.* at 6 (§ 10.2(c)). Declaration of Kelly Wulff ("Wulff Decl.") ¶¶ 2–4. Corgi did not contact Vouch or any of the Defendants at all. *Id.*

Each one of Corgi's claims is premised upon, and relates to, Defendants' alleged access of Corgi's "underwriting platform" (*i.e.*, its publicly-available website) on February 10, 2026. According to the Complaint, "[t]he Vouch Defendants [] orchestrated a scheme for Wulff," Vouch's Chief Legal & Administrative Officer, "to engage with Corgi's proprietary underwriting platform, extract trade secrets[,] and deliver that intelligence to the Vouch Defendants." Compl. ¶ 1. Corgi alleges that "the Vouch Entity Defendants" "directed Wulff to create Augmenta," *id.* ¶ 38—the "alter ego [of] the Vouch Defendants," *id.* ¶ 15—and that "act[ing] within the scope of her employment and for the benefit of the Vouch Entity Defendants," *id.* ¶¶ 13, 14, Ms. Wulff accessed Corgi's website on Defendants' behalf and agreed to the Terms of Use, which include the Arbitration Agreement, *id.* ¶¶ 27, 28(j). Corgi asserts that thereafter, Ms. Wulff used the Site and its Services to "submit[] [an] insurance application on [Augmenta's] behalf." *Id.* ¶¶ 3, 27. Based on the online application submission, Corgi issued a Commercial General Liability policy to Augmenta, which Ms. Wulff canceled "within days," purportedly "having obtained" Corgi's "proprietary" information "for the benefit of the Vouch Defendants," Compl. ¶¶ 2, 31, 33, 35.

The Complaint asserts seven claims based on this event. According to Corgi, this website access breached its Terms of Use, which prohibit use of the website "for competitive intelligence

6207582

gathering" or "to build or improve a competitive product." Compl. ¶ 61. Corgi likewise asserts trade-secret and other tort claims (civil conspiracy, unjust enrichment, fraud), and a declaratory-relief claim, all of which trace back to Defendants' alleged access to and use of Corgi's website, governed by the Terms of Use.

## IV.    LEGAL STANDARD

Congress enacted the Federal Arbitration Act ("FAA") to reverse the "widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see* 9 U.S.C. § 1, *et seq.* The FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution," *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012), and "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms,'" *Epic Sys. Corp v. Lewis*, 584 U.S. 497, 506 (2018). It respects arbitration as "a matter of contract" and prohibits courts from jumping in when the parties agreed to resolve disputes privately. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019).

The FAA is mandatory where it applies: "courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). And where the existence of an enforceable arbitration agreement is "apparent on the face of the complaint," as here, the court must compel arbitration "under a motion to dismiss standard without [discovery's delay.]" *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-74 (3d Cir. 2013).

## V.    ARGUMENT

### A.    The Court should compel arbitration of Corgi's claims.

#### 1.    Corgi's Arbitration Agreement is valid, enforceable, and broad.

Under the FAA, arbitration agreements are presumptively valid and enforceable. *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 649–650 n.3 (2022). The FAA contains an

6207582

"enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law," *id.* at 650, and permits invalidation of arbitration clauses only "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. As arbitration is favored, "the party resisting arbitration . . . bear[s] the burden of showing that the claims at issue are unsuitable for arbitration." *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 556 n.3 (3d Cir. 2023).

Here, Corgi cannot dispute the validity or enforceability of the Arbitration Agreement contained in its Terms of Use. Corgi itself drafted the relevant contract; purports to require third parties to accept the Terms before applying for insurance through its website; and states that visitors accept the Terms on behalf of themselves or any "entity [they] represent" by "accessing or using the site." Ex. A at 1. Corgi also alleges and expressly relies on the contract containing the Arbitration Agreement to assert its claims. *See infra*; Compl. ¶¶ 26, 59–64 (asserting breach of the Terms); *id.* ¶ 60 (alleging the Terms "constitute a binding contract"). Based on Corgi's allegations, the Arbitration Agreement is valid and enforceable.

The Agreement's arbitration provision is sweeping. The Terms state "that all disputes between you and us shall be resolved by binding and final arbitration." Ex. A at 1. And the arbitration provision expressly covers "any dispute between you and any of the Company Parties ***relating in any way*** to the Site, the services offered on the Site (the 'Services') or these Terms." *Id.* at 5 (§ 10.2(a)). Delaware courts consider "arising out of or relating to" language like this to be "broad," and such broad clauses reach even those claims that merely "touch on contract rights or contract performance." *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002); *see also E. Hedinger AG v. Brainwave Sci., LLC*, 363 F. Supp. 3d 499, 508–09 (D. Del. 2019). Thus, Corgi's arbitration provision, which covers disputes "relating in any way" to its Site, Services, or Terms, covers all possible claims that merely touch on the rights and

obligations referenced in the Terms of Use.

### 2.   Corgi's Arbitration Agreement covers all of Corgi's claims.

Every claim in the Complaint is premised on Defendants' alleged use of the Site to submit an online insurance application to obtain proprietary information for the Vouch Defendants in violation of the Terms of Use. As such, every claim asserted by Corgi reflects a "dispute . . . relating in any way to the Site, the services offered on the Site . . . or these Terms," and falls squarely within the scope of the Arbitration Agreement. Ex. A at 5 (§ 10.2(a)).

**Counts I and II** (DTSA and DUTSA). Corgi's trade secret claims are disputes about alleged misuse of Corgi's Site and Services. Corgi avers that Ms. Wulff/Augmenta used the Site to access Corgi's confidential underwriting information and policy forms in agreement with, and at the behest of, the Vouch Defendants. *See* Compl. ¶¶ 1–2, 14, 25, 27–31. That alone brings the claims within the Arbitration Agreement. But beyond that, Corgi relies on the Terms to allege that the information the Defendants assertedly accessed constitutes a "trade secret." Corgi insists, for instance, that it protects the proprietary information at issue by "restricting access to Corgi's underwriting platform through acceptance of binding Terms of Use" and "including express prohibitions [in those Terms] against using the platform for competitive purposes (Section 2.2(c))." Compl. ¶ 26. These claims thus rely on Defendants' access to the Site and expressly reference the Terms. *Id.*; *see also* Ex. A at 5 (§ 10.2(a)).

The Terms' limited "equitable relief" carve-out does not help Corgi. The carve-out permits a party to "seek equitable relief in court for infringement or other misuse of intellectual property rights," but it does not exempt any *claims* from arbitration. Ex. A at 5 (§ 10.2(a)). Courts have consistently read analogous provisions to preserve only the ability to obtain preliminary equitable relief "in aid of arbitration," not to carve out entire causes of action. *See, e.g.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484–85 (9th Cir. 2020); *Comedy Club, Inc. v.*

8

6207582

*Improv W. Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009). The reasoning is straightforward: because the FAA does not itself authorize courts to issue injunctions, parties include such provisions to ensure access to temporary equitable relief that maintains the status quo while arbitration proceeds—not to exempt merits disputes from the arbitrator. *Comedy Club*, 553 F.3d at 1285. In any event, whether this "equitable relief" carveout enables Corgi to proceed with its trade secret claims in court is a question of interpretation and applicability of the Arbitration Agreement—gateway issues that the delegation clause commits exclusively to the arbitrator, not this Court. *See Henry Schein*, 586 U.S. at 68; *see also infra* Section V.A.3.

**Count III (civil conspiracy).** The conspiracy alleged in Count III was assertedly carried out by accessing Corgi's Site to obtain "proprietary competitive intelligence." Compl. ¶ 55. Plaintiffs allege that all Defendants collectively "agreed [with each other] to misappropriate the [asserted] Trade Secret Information"; that the Vouch Defendants "directed Wulff to form Augmenta and then submit a pretextual application to [] Plaintiffs' platform for purposes of extracting proprietary competitive intelligence"; that Augmenta and Wulff did indeed "go[] through Plaintiffs' entire underwriting flow and induc[e] Plaintiffs to issue a policy"; and that Wulff canceled the policy after supposedly receiving and delivering the Trade Secret Information to the Vouch Defendants. Compl. ¶¶ 55–57. The insurance application, the policy issuance, and the receipt of platform-generated materials are "services offered on the Site," bringing this claim squarely within the Arbitration Agreement. Ex. A at 5 (§ 10.2(a)). Courts routinely compel arbitration of conspiracy and related claims where, as here, the alleged wrongdoing was carried out through the platform governed by the agreement containing the arbitration clause. *See E. Hedinger*, 363 F. Supp. 3d at 508–09.

**Count IV (breach of contract).** Corgi's breach of contract claim unquestionably

"relat[es] to" the Terms; it alleges a violation of them and contends that the Vouch Defendants are liable for Augmenta's breach "under agency principles" or because "Augmenta is an alter ego" for the Vouch Defendants. Compl. ¶¶ 60–64. Given that it asserts a breach of the very contract containing the Arbitration Agreement, the claim indisputably "relat[es] in any way" to the Terms and is subject to the Arbitration Agreement. Ex. A at 5 (§ 10.2(a)).

**Count V (unjust enrichment).** Corgi's unjust enrichment claim is premised on precisely the same facts as the breach of contract and trade secret claims and is therefore a dispute "relating" to the Site, Services, or Terms. Ex. A at 5 (§ 10.2(a)). Corgi avers that "Defendants procured [Plaintiffs'] proprietary and commercially sensitive business information under the guise of Augmenta submitting a false and illegitimate insurance application"; that "Defendants immediately canceled the issued policy"; and that Defendants "retained" the "proprietary and commercially sensitive business information they procured for the [Vouch Defendants]." Compl. ¶¶ 66–68. Stripped of its restitutionary language, this is just another claim that Defendants used the Site and Services in violation of the Terms' use restrictions to obtain confidential or trade secret information. Calling it a restitution claim, rather than a "trade secret" or "breach of contract" claim, doesn't alter the calculus. *See 250ok, Inc. v. Message Sys., Inc.*, 2021 WL 225874, at *5 (Del. Ch. Jan. 22, 2021) ("While [plaintiff] avoids the term 'trade secret' … it is clear the claim for unjust enrichment … rests on the same alleged misappropriation of confidential information … that animates the misappropriation of trade secrets claim.").

**Count VI (fraud).** Corgi's fraud claim is likewise premised on access to and use of the Corgi website. Corgi avers that Augmenta, through Ms. Wulff, "submitted an insurance application to Plaintiffs [through] Corgi's proprietary underwriting platform at www.corgi.insure that implicitly represented a bona fide request for coverage," Compl. ¶ 71; and that Corgi "relied

10

6207582

on Defendants' misrepresentation and concealment to issue a policy and disclose the Trade Secret Information," *id.* ¶ 72. The fraud claim, in essence, is a claim that Ms. Wulff (on behalf of Defendants) was dishonest in filing an application on Corgi's website to obtain insurance coverage, conduct that is plainly covered by the Terms of Use.

**Count VII (declaratory relief).** Corgi's final claim seeks a declaration that the insurance policy it issued Augmenta through its website, which it simultaneously asserts was "immediately canceled," Compl. ¶ 68—is "void ab initio" based on purported misrepresentations in Augmenta's online insurance application. Compl. ¶¶ 75–77. This policy was issued by accessing a Service offered through Corgi's Site and thus necessarily relates to the Site and Services. *See E. Hedinger*, 363 F. Supp. 3d at 508–09. As with all the prior claims, it squarely falls within the scope of the Arbitration Agreement.

3.      **Even if there were a dispute about whether Corgi's claims are arbitrable, the Terms of Use delegate that issue to the arbitrator.**

When there is a dispute over whether a claim is subject to arbitration, courts must nonetheless compel arbitration where (1) there is a valid arbitration agreement that (2) "clearly and unmistakably" delegates arbitrability to the arbitrator. *See Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 145 (3d Cir. 2022). If both elements are present, "a court possesses no power to decide the arbitrability issue." *Henry Schein*, 586 U.S. at 68. A delegation clause is "an agreement to arbitrate threshold issues concerning the arbitration agreement." *Singh*, 67 F.4th at 563. It "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). A court must enforce a delegation clause "even if [it] thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68.

Here, the Terms clearly and unmistakably delegate arbitrability to the arbitrator. ***First***,

11

they include an explicit delegation clause providing that "[t]he arbitrator shall have exclusive authority to resolve all disputes subject to arbitration hereunder including, ***without limitation***, any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement or any portion of the Arbitration Agreement." Ex. A at 7 (§ 10.2(d)). Courts "routinely" find such language to reflect "a sufficiently clear delegation of the gateway [issues] to the arbitrator." *Christian v. Pressed Juicery, Inc.*, 2021 WL 4771801, at *4 (C.D. Cal. Apr. 23, 2021) (collecting cases).

***Second***, the Terms provide that any arbitration "shall be subject to JAMS's most current version of the Comprehensive Arbitration Rules and Procedures," Ex. A at 6 (§ 10.2(c)), which in turn provide that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." The Delaware Supreme Court has held that when parties incorporate arbitral rules empowering an arbitrator to decide issues of substantive arbitrability, "the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006). Between the explicit delegation clause and incorporation of the JAMS rules, there can be no doubt that the parties intended to delegate gateway arbitrability issues to the arbitrator.

### 4. Corgi's arbitration agreement applies to its claims against all defendants.

All six of the defendants may invoke the arbitration provision in the Terms of Use to compel arbitration as to the claim against them. The claims against Augmenta are arbitrable because Ms. Wulff, acting on behalf of Augmenta, accepted the Terms of Use. The Vouch Defendants, including Ms. Wulff, may rely on the arbitration provision both because Corgi alleges they are alter egos of Augmenta; and because Corgi has sued them based on a violation of (or in reliance on) the Terms of Use, under the doctrine of equitable estoppel.

6207582

### a.    Augmenta may compel arbitration of Corgi's claims.

It is axiomatic that a party to a contract containing an arbitration provision may invoke that provision in connection with a claimed breach of the contract. *See, e.g.*, *Zephyr Fluid Sols., LLC v. Scholle IPN Packaging, Inc.*, 2023 WL 1795798, at *2–3 (D. Del. Feb. 7, 2023). Corgi's Complaint asserts that Augmenta "agreed to the Terms and Conditions of Corgi's platform." Compl. ¶ 28(j). Corgi further avers that the "Terms of Use, Version 1.0, effective January 7, 2026" are a binding contract; and that Augmenta, through Ms. Wulff, breached the Terms of Use. *Id.* ¶ 60. Because Augmenta is a party to the contract, the arbitration clause mandates arbitration of Corgi's claims against Augmenta. *See supra* Section V.A.1–3.

### b.    The Vouch Defendants may compel arbitration of Corgi's claims.

The Complaint asserts that Augmenta acted at the Vouch Defendants' behest but does not expressly allege that the Vouch Defendants are signatories or parties to a contract containing the Arbitration Agreement. Nonetheless, "a litigant who [i]s not a party to [an] arbitration agreement may invoke [arbitration under the FAA] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

As a threshold matter, there is no conflict between California and Delaware law regarding the ability of nonsignatories to enforce an arbitration agreement. Under Delaware choice of law rules, "[i]f application of the competing laws would yield the same result, then no genuine conflict exists and the [c]ourt should avoid the choice-of-law analysis altogether." *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014). Under both states' laws, "[g]eneral contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories." *Levi Strauss & Co. v. Aqua Dynamics Sys., Inc.*, 2016 WL 6082415, at *5 (N.D. Cal. Oct. 18, 2016); *accord E.I. DuPont de Nemours & Co. v. Rhone*

13

6207582

*Poulenc Fiber & Resin Intermediates., S.A.S.*, 269 F.3d 187, 194–95 (3d Cir. 2001). "Among these principles are 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Mundi v. Union Sec. Life Ins.*, 555 F.3d 1042, 1045 (9th Cir. 2008); *accord Arigna Tech. Ltd. v. Longford Cap. Fund III LP*, 2024 WL 2848224, at *4 (D. Del. June 5, 2024). Because there are no relevant conflicts between California and Delaware law with respect to nonsignatory enforcement of arbitration agreements, the Court may apply both states' laws interchangeably.

As set forth below, Corgi's claims against the Vouch Defendants are arbitrable under either the alter-ego theory or the doctrine of equitable estoppel.

> **c.**    **The Vouch Defendants may compel arbitration because Corgi alleges the Vouch Defendants and Augmenta are alter egos.**

The Complaint contains detailed averments of concerted misconduct, including express allegations that Augmenta is a party to the Arbitration Agreement, Compl. ¶ 28(j), and that "Augmenta Advisory is the alter ego of the Vouch Defendants," *id.* ¶ 15; *see also*, *e.g.*, *id.* ¶ 63 ("Alternatively, the Vouch Defendants are liable for Augmenta's breach of the Terms of Use as Augmenta is an alter ego [of] the Vouch Entity Defendants"). As Augmenta's asserted "alter ego[s]"—who "orchestrated" the "scheme," "directed Wulff to create Augmenta," and "used [Augmenta] to carry out the breach of the Terms of Use and misappropriation of the Trade Secret Information," *id.* ¶¶ 1, 38, 63—the Vouch Defendants may invoke the Arbitration Agreement to compel to arbitration the claims against them.

Importantly, it is "***a plaintiff's allegations***" concerning this relationship that are "sufficient" to allow alleged alter egos "to invoke the benefit of an arbitration agreement." *Michael Yadegari et al v. Ford Motor Co. et al*, 2023 WL 11067049, at *3 (C.D. Cal. Dec. 20, 2023) ("Nonsignatory ***alleged*** alter egos are entitled to compel arbitration."); *cf. Colon v.*

14

*Conchetta, Inc.*, 2017 WL 2572517, at *5 (E.D. Pa. June 14, 2017) (agency allegations sufficient to compel arbitration); *Guidotti*, 716 F.3d at 772 (where arbitrability is apparent on face of complaint, courts apply a 12(b)(6) standard to an arbitration motion, "accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff"). Accordingly, the claims against the Vouch Defendants may be compelled to arbitration.

> **d.      The Vouch Defendants may compel arbitration under the doctrine of equitable estoppel.**

As an alternative, independent ground to compel arbitration of the claims against them, the Vouch Defendants may invoke the Arbitration Agreement under the doctrine of equitable estoppel. Under that doctrine, a nonsignatory may invoke arbitration "even when a signatory 'attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants.'" *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870–71 (9th Cir. 2021). The doctrine applies to claims against nonsignatories in either of two circumstances: (1) "when the claims against the nonsignatory are intimately founded in and intertwined with the underlying contract"; or (2) "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of the interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F. 4th 702, 707, n.5 (9th Cir. 2024).[6] Both circumstances support

---

[6] Delaware law is equivalent. *See Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006) (noting that Delaware law allows a nonsignatory to compel a signatory to arbitrate under equitable estoppel (1) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory" or (2) "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract").

6207582

applying equitable estoppel here to allow the Vouch Defendants to compel to arbitration the claims against them.

i.      **Corgi's claims against the Vouch Defendants are intertwined with the Terms of Use.**

As discussed in detail above, *see* Section V.A.2 *supra*, every claim Corgi asserts against the Vouch Defendants depends on, arises from, or requires interpretation of, the Terms of Use containing the Arbitration Agreement.

The breach of contract claim (Count IV), by definition, is intertwined with the Terms: it alleges a breach of those very Terms of Use. *See Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 217–18 (2009); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Corgi's trade secret claims (Counts I and II) cannot be evaluated without interpreting the Terms because, among other reasons, the supposed "improper means" of access are based on a purported violation of the Terms; and because Corgi alleges that it protects its Trade Secret Information via provisions in its Terms of Use. Compl. ¶ 26(a)–(b); *see also Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1185 (N.D. Cal. 2013). The factfinder will therefore need to analyze the Terms to determine if any information qualifies as a trade secret, rendering the trade secret claims inextricably intertwined with the contract containing the Arbitration Agreement. *See E. Hedinger*, 363 F. Supp. 3d at 508–09.

The other non-contract claims are equally intertwined. The civil conspiracy claim (Count III) was allegedly carried out through the Site using Services governed by the Terms. The unjust enrichment claim (Count V) depends on whether the Terms' use restrictions prohibited Defendants' conduct (potentially rendering any enrichment "unjust")—necessitating interpretation of the agreement. The fraud claim (Count VI) likewise depends on the Terms because the alleged fraud—submitting a pretextual insurance application to obtain proprietary

16

materials—derives from Augmenta's purported violation of the Terms. Compl. ¶ 71; *see also Turing Video Tech., Inc. v. AGI7 Inc.*, 2025 WL 579190, at *4 (N.D. Cal. Feb. 21, 2025) (plaintiff "cannot avoid arbitration by foreswearing reliance on the agreement after it decides to sue"). Because the allegations "cannot be answered without reference to" the Terms, the fraud claim is intertwined with the contract. *Franklin*, 998 F.3d at 875–76. Finally, the declaratory relief claim (Count VII) seeks to void a policy issued through the platform based on "material misrepresentation[s]" in the application, Compl. ¶¶ 74–77—an application that, again, was submitted through the Site in alleged violation of the Terms. *Nutanix, Inc. v. Tessell, Inc.*, 2025 WL 793652, at *6 (N.D. Cal. Mar. 12, 2025) (compelling arbitration of declaratory relief claim that depended on the agreement). Every claim is thus intertwined with the Terms.

### ii.   Corgi alleges concerted misconduct between Defendants.

Equitable estoppel also allows the Vouch Defendants to invoke the Arbitration Agreement because Plaintiffs allege concerted misconduct by the Defendants. In the arbitration context, the doctrine of equitable estoppel bars a party from reaping the benefits of a contract while simultaneously avoiding the contract's arbitration provision. *See Herrera*, 104 F.4th at 710. It permits courts to compel a signatory to arbitrate with nonsignatories when the circumstances demand fairness. *Id.* ("The 'linchpin' [of] equitable estoppel is fairness."). Estoppel is particularly appropriate where, as here, the plaintiff alleges that a signatory and nonsignatory acted "jointly in furtherance of a common scheme," and the legality of that scheme cannot be resolved without looking to the terms of the plaintiff's contract. *See Sanders v. Swift Transp. Co. of Ariz., LLC*, 843 F. Supp. 2d 1033, 1038 (N.D. Cal. 2012). Where the signatory allegedly initiated and organized the common scheme with the nonsignatory, the case for estoppel is strongest. *See Carter v. Spiegel*, 2022 WL 126303, at *6 (N.D. Cal. Jan. 13, 2022).

17

6207582

Corgi has accused all of the Defendants, including the Vouch Entity Defendants and Ms. Wulff, of breaching the contract, and attempts to hold them responsible for conduct that occurred in connection with the Corgi Site and Services. According to the Complaint, "[t]he [nonsignatory] Vouch Defendants [] orchestrated a scheme for Wulff to engage with Corgi's proprietary underwriting platform, extract trade secrets[,] and deliver that intelligence to the Vouch Defendants." Compl. ¶ 1. To that end, "the Vouch Entity Defendants" assertedly "directed Wulff to create Augmenta," *id.* ¶ 38—the "alter ego of the Vouch Defendants"—on February 10, 2026, *id.* ¶ 15. "[A]ct[ing] within the scope of her employment and for the benefit of the Vouch Entity Defendants," *id.* ¶¶ 13, 14, Ms. Wulff then purportedly accessed Corgi's website on Defendants' behalf, "agreed to the Terms and Conditions" on behalf of Augmenta, *id.* ¶¶ 27, 28(j), obtained trade secret information, *id.* ¶ 38, and "deliver[ed] it to the Vouch Defendants for their commercial benefit," *id.*

These are precisely the type of allegations of "substantially interdependent and concerted misconduct" between signatories and nonsignatories that trigger equitable estoppel. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013); *Turing Video Tech., Inc.*, 2025 WL 579190, at *4–5 (compelling arbitration where plaintiff alleged signatory acted at the direction of and for the benefit of nonsignatory); *CAP Diagnostics, LLC v. Emeritus Med. Tech. LLC*, 2023 WL 8351561, at *11 (C.D. Cal. Oct. 25, 2023) (same); *Sanum Inv. Ltd. v. San Marco Capital Partners LLC*, 263 F. Supp. 3d 491, 496 (D. Del. 2017) (finding that a "close relationship" sufficient to compel arbitration exists "in cases involving subsidiaries, affiliates, agents, and other related business entities"). Corgi's Complaint is rooted in allegations that Defendants acted "jointly in furtherance of a common scheme" to misappropriate its trade secrets. And all of the asserted conduct took place using the platform that is governed by Terms

18

6207582

that contain the Arbitration Agreement. Nothing more is needed.

### B.    The Court should stay this case pending arbitration.

For the foregoing reasons, Corgi's claims against all Defendants should be compelled to arbitration. In the meantime, "the FAA compels district courts to stay rather than dismiss a case when any issue in a suit is subject to arbitration." *Weiner v. Evolve Bank & Trust*, 2026 WL 483040, at *2 (D. Del. Feb. 20, 2026) (citing *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024)). This Court should therefore compel Corgi's claims to arbitration and stay this matter pending the conclusion of the arbitration.

### C.    Defendants are entitled to recover their attorneys' fees and costs associated with this motion.

Defendants are entitled to their fees and costs of preparing and litigating this motion for two independent reasons: (1) Corgi ignored the mandatory Informal Dispute Resolution ("IDR") provision in the Terms of Use and filed this lawsuit prematurely; and (2) Corgi disregarded the mandatory arbitration provision, and forced Defendants to file this motion and obtain an order compelling arbitration.

As discussed in detail above, the Terms of Use require that covered disputes be brought in arbitration, Ex. A at 5 (§ 10.2(a)), and include a mandatory IDR process requiring the parties to "personally meet and confer telephonically or via videoconference, in a good faith effort to resolve informally any Dispute" before commencing arbitration, *id.* at 6 (§ 10.2(b)). The dispute-resolution process may not be disregarded: "Engaging in the Informal Dispute Resolution Conference is a condition precedent and requirement that must be fulfilled before commencing arbitration." *Id.*

To ensure compliance, the Terms include two separate fee-shifting provisions. First, if a party must "invoke the authority of a court of competent jurisdiction to compel arbitration, then

6207582

the party that obtains an order compelling arbitration in such action *shall have the right to collect* from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing" the order. Ex. A at 8 (§ 10.2(g)). Second, "the prevailing party in any court action relating to whether either party has satisfied . . . the [IDR] Process, is entitled to recover" their fees and costs. *Id.*

If the Court compels arbitration, as it should, the Terms clearly provide that Defendants (as the party who secured that order) recover their fees. In addition, there can be no doubt that Corgi failed to follow the IDR requirements. Corgi did not contact any defendant before filing suit; give notice in writing of "[its] intent to initiate an [I]nformal [D]ispute [R]esolution [C]onference," or participate in any such conference. Wulff Decl. ¶¶ 2–4. Corgi's failure to follow the IDR process cannot be excused by the fact that it filed a lawsuit rather than initiating arbitration. Were that the case, a party could easily evade a mandatory contractual requirement, described as a "condition precedent," simply by ignoring the rest of the contract. Ex. A at 6 (§10.2(b)).

The Court should award Defendants their reasonable fees and costs incurred in connection with this motion and allow them to file a fees petition within 21 days of entry of the order compelling arbitration or otherwise finding non-compliance with the IDR process.

## VI.    CONCLUSION

Defendants respectfully request that the Court (1) compel arbitration of all claims against all Defendants; (2) stay this action pending arbitration; (3) issue an order finding that Corgi did not comply with section 10.2(b) of the Terms of Use; (4) award Defendants reasonable attorneys' fees, costs, and necessary disbursements incurred in connection with this motion; and (5) permit Defendants to submit a fee application within twenty-one days of entry of an order compelling arbitration or otherwise finding non-compliance with the IDR process.

20

6207582

Respectfully submitted,

June 4, 2026

OF COUNSEL:

KEKER, VAN NEST & PETERS LLP
Warren A. Braunig
Cody Gray
Jacqueline Concilla
Michaela Firmage
633 Battery Street
San Francisco, CA 94111
(415) 391-5400
wbraunig@keker.com
cgray@keker.com
jconcilla@keker.com
mfirmage@keker.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

 /s/ Robert M. Vrana
Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Defendants Vouch, Inc., Vouch
Specialty Insurance Services, LLC, Vouch US
Insurance Services Holdings, LLC, Vouch Risk
Management Services, LLC, Kelly Wulff, and
Augmenta Advisory, LLC*

21

6207582

# Exhibit A

WEBSITE TERMS OF USE
VERSION 1.0
LAST REVISED ON: JANUARY 7, 2026

The website located at www.corgi.insure (the "**Site**") is a copyrighted work belonging to Corgi Insurance Services, Inc. ("**Company**", "**us**", "**our**", and "**we**"). Certain features of the Site may be subject to additional guidelines, terms, or rules, which will be posted on the Site in connection with such features. All such additional terms, guidelines, and rules are incorporated by reference into these Terms.

THESE TERMS OF USE (THESE "**TERMS**") SET FORTH THE LEGALLY BINDING TERMS AND CONDITIONS THAT GOVERN YOUR USE OF THE SITE. BY ACCESSING OR USING THE SITE, YOU ARE ACCEPTING THESE TERMS (ON BEHALF OF YOURSELF OR THE ENTITY THAT YOU REPRESENT), AND YOU REPRESENT AND WARRANT THAT YOU HAVE THE RIGHT, AUTHORITY, AND CAPACITY TO ENTER INTO THESE TERMS (ON BEHALF OF YOURSELF OR THE ENTITY THAT YOU REPRESENT). YOU MAY NOT ACCESS OR USE THE SITE OR ACCEPT THE TERMS IF YOU ARE NOT AT LEAST 18 YEARS OLD. IF YOU DO NOT AGREE WITH ALL OF THE PROVISIONS OF THESE TERMS, DO NOT ACCESS AND/OR USE THE SITE.

**PLEASE BE AWARE THAT SECTION 10.2 CONTAINS PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND COMPANY. AMONG OTHER THINGS, SECTION 10.2 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION. SECTION 10.2 ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER. PLEASE READ SECTION 10.2 CAREFULLY.**

**UNLESS YOU OPT OUT OF THE AGREEMENT TO ARBITRATE WITHIN 30 DAYS: (1) YOU WILL ONLY BE PERMITTED TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING AND YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION; AND (2) YOU ARE WAIVING YOUR RIGHT TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL.**

1.      ACCOUNTS

        **1.1      Account Creation.**  In order to use certain features of the Site, you must register for an account ("**Account**") and provide certain information about yourself as prompted by the account registration form. You represent and warrant that: (a) all required registration information you submit is truthful and accurate; (b) you will maintain the accuracy of such information. You may delete your Account at any time, for any reason, by following the instructions on the Site. Company may suspend or terminate your Account in accordance with Section 8.

        **1.2      Account Responsibilities.**  You are responsible for maintaining the confidentiality of your Account login information and are fully responsible for all activities that occur under your Account. You agree to immediately notify Company of any unauthorized use, or suspected unauthorized use of your Account or any other breach of security. Company cannot and will not be liable for any loss or damage arising from your failure to comply with the above requirements.

2.      ACCESS TO THE SITE

        **2.1      License.**  Subject to these Terms, Company grants you a non-transferable, non-exclusive, revocable, limited license to use and access the Site solely for your own personal, noncommercial use.

        **2.2      Certain Restrictions.**  The rights granted to you in these Terms are subject to the following restrictions: (a) you shall not license, sell, rent, lease, transfer, assign, distribute, host, or otherwise commercially

exploit the Site, whether in whole or in part, or any content displayed on the Site; (b) you shall not modify, make derivative works of, disassemble, reverse compile or reverse engineer any part of the Site; (c) you shall not access the Site in order to build a similar or competitive website, product, or service; and (d) except as expressly stated herein, no part of the Site may be copied, reproduced, distributed, republished, downloaded, displayed, posted or transmitted in any form or by any means. Unless otherwise indicated, any future release, update, or other addition to functionality of the Site shall be subject to these Terms. All copyright and other proprietary notices on the Site (or on any content displayed on the Site) must be retained on all copies thereof.

**2.3    Modification.**  Company reserves the right, at any time, to modify, suspend, or discontinue the Site (in whole or in part) with or without notice to you. You agree that Company will not be liable to you or to any third party for any modification, suspension, or discontinuation of the Site or any part thereof.

**2.4    No Support or Maintenance.**  You acknowledge and agree that Company will have no obligation to provide you with any support or maintenance in connection with the Site.

**2.5    Ownership.**  Excluding any User Content that you may provide (defined below), you acknowledge that all the intellectual property rights, including copyrights, patents, trade marks, and trade secrets, in the Site and its content are owned by Company or Company's suppliers. Neither these Terms (nor your access to the Site) transfers to you or any third party any rights, title or interest in or to such intellectual property rights, except for the limited access rights expressly set forth in Section 2.1. Company and its suppliers reserve all rights not granted in these Terms. There are no implied licenses granted under these Terms.

**2.6    Feedback.**  If you provide Company with any feedback or suggestions regarding the Site ("**Feedback**"), you hereby assign to Company all rights in such Feedback and agree that Company shall have the right to use and fully exploit such Feedback and related information in any manner it deems appropriate. Company will treat any Feedback you provide to Company as non-confidential and non-proprietary. You agree that you will not submit to Company any information or ideas that you consider to be confidential or proprietary.

**3.    USER CONTENT**

**3.1    User Content.**  "**User Content**" means any and all information and content that a user submits to, or uses with, the Site (e.g., content in the user's profile or postings). You are solely responsible for your User Content. You assume all risks associated with use of your User Content, including any reliance on its accuracy, completeness or usefulness by others, or any disclosure of your User Content that personally identifies you or any third party. You hereby represent and warrant that your User Content does not violate our Acceptable Use Policy (defined in Section 3.3). You may not represent or imply to others that your User Content is in any way provided, sponsored or endorsed by Company. Since you alone are responsible for your User Content, you may expose yourself to liability if, for example, your User Content violates the Acceptable Use Policy. Company is not obligated to backup any User Content, and your User Content may be deleted at any time without prior notice. You are solely responsible for creating and maintaining your own backup copies of your User Content if you desire.

**3.2    License.**  You hereby grant (and you represent and warrant that you have the right to grant) to Company an irrevocable, nonexclusive, royalty-free and fully paid, worldwide license to reproduce, distribute, publicly display and perform, prepare derivative works of, incorporate into other works, and otherwise use and exploit your User Content, and to grant sublicenses of the foregoing rights, solely for the purposes of including your User Content in the Site. You hereby irrevocably waive (and agree to cause to be waived) any claims and assertions of moral rights or attribution with respect to your User Content.

**3.3    Acceptable Use Policy.**  The following terms constitute our "**Acceptable Use Policy**":

**(a)**    You agree not to use the Site to collect, upload, transmit, display, or distribute any User Content (i) that violates any third-party right, including any copyright, trademark, patent, trade secret, moral right, privacy right, right of publicity, or any other intellectual property or proprietary right, (ii) that is unlawful, harassing, abusive, tortious, threatening, harmful, invasive of another's privacy, vulgar, defamatory, false, intentionally misleading, trade libelous, pornographic, obscene, patently offensive, promotes racism, bigotry, hatred, or physical

harm of any kind against any group or individual or is otherwise objectionable, (iii) that is harmful to minors in any way, or (iv) that is in violation of any law, regulation, or obligations or restrictions imposed by any third party.

(b)    In addition, you agree not to: (i) upload, transmit, or distribute to or through the Site any computer viruses, worms, or any software intended to damage or alter a computer system or data; (ii) send through the Site unsolicited or unauthorized advertising, promotional materials, junk mail, spam, chain letters, pyramid schemes, or any other form of duplicative or unsolicited messages, whether commercial or otherwise; (iii) use the Site to harvest, collect, gather or assemble information or data regarding other users, including e-mail addresses, without their consent; (iv) interfere with, disrupt, or create an undue burden on servers or networks connected to the Site, or violate the regulations, policies or procedures of such networks; (v) attempt to gain unauthorized access to the Site (or to other computer systems or networks connected to or used together with the Site), whether through password mining or any other means; (vi) harass or interfere with any other user's use and enjoyment of the Site; or (vii) use software or automated agents or scripts to produce multiple accounts on the Site, or to generate automated searches, requests, or queries to (or to strip, scrape, or mine data from) the Site (provided, however, that we conditionally grant to the operators of public search engines revocable permission to use spiders to copy materials from the Site for the sole purpose of and solely to the extent necessary for creating publicly available searchable indices of the materials, but not caches or archives of such materials, subject to the parameters set forth in our robots.txt file).

**3.4    Enforcement.**  We reserve the right (but have no obligation) to review, refuse and/or remove any User Content in our sole discretion, and to investigate and/or take appropriate action against you in our sole discretion if you violate the Acceptable Use Policy or any other provision of these Terms or otherwise create liability for us or any other person. Such action may include removing or modifying your User Content, terminating your Account in accordance with Section 8, and/or reporting you to law enforcement authorities.

**4.    INDEMNIFICATION.**  You agree to indemnify and hold Company (and its officers, employees, and agents) harmless, including costs and attorneys' fees, from any claim or demand made by any third party due to or arising out of (a) your use of the Site, (b) your violation of these Terms, (c) your violation of applicable laws or regulations or (d) your User Content. Company reserves the right, at your expense, to assume the exclusive defense and control of any matter for which you are required to indemnify us, and you agree to cooperate with our defense of these claims. You agree not to settle any matter without the prior written consent of Company. Company will use reasonable efforts to notify you of any such claim, action or proceeding upon becoming aware of it.

**5.    THIRD-PARTY LINKS & ADS; OTHER USERS**

**5.1    Third-Party Links & Ads.**  The Site may contain links to third-party websites and services, and/or display advertisements for third parties (collectively, "**Third-Party Links & Ads**"). Such Third-Party Links & Ads are not under the control of Company, and Company is not responsible for any Third-Party Links & Ads. Company provides access to these Third-Party Links & Ads only as a convenience to you, and does not review, approve, monitor, endorse, warrant, or make any representations with respect to Third-Party Links & Ads. You use all Third-Party Links & Ads at your own risk, and should apply a suitable level of caution and discretion in doing so. When you click on any of the Third-Party Links & Ads, the applicable third party's terms and policies apply, including the third party's privacy and data gathering practices. You should make whatever investigation you feel necessary or appropriate before proceeding with any transaction in connection with such Third-Party Links & Ads.

**5.2    Other Users.**  Each Site user is solely responsible for any and all of its own User Content. Since we do not control User Content, you acknowledge and agree that we are not responsible for any User Content, whether provided by you or by others. We make no guarantees regarding the accuracy, currency, suitability, appropriateness, or quality of any User Content. Your interactions with other Site users are solely between you and such users. You agree that Company will not be responsible for any loss or damage incurred as the result of any such interactions. If there is a dispute between you and any Site user, we are under no obligation to become involved.

**5.3    Release.**  You hereby release and forever discharge Company (and our officers, employees, agents, successors, and assigns) from, and hereby waive and relinquish, each and every past, present and future dispute, claim, controversy, demand, right, obligation, liability, action and cause of action of every kind and nature (including personal injuries, death, and property damage), that has arisen or arises directly or indirectly out of, or that relates

directly or indirectly to, the Site (including any interactions with, or act or omission of, other Site users or any Third-Party Links & Ads). IF YOU ARE A CALIFORNIA RESIDENT, YOU HEREBY WAIVE CALIFORNIA CIVIL CODE SECTION 1542 IN CONNECTION WITH THE FOREGOING, WHICH STATES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

6.     DISCLAIMERS

THE SITE IS PROVIDED ON AN "AS-IS" AND "AS AVAILABLE" BASIS, AND COMPANY (AND OUR SUPPLIERS) EXPRESSLY DISCLAIM ANY AND ALL WARRANTIES AND CONDITIONS OF ANY KIND, WHETHER EXPRESS, IMPLIED, OR STATUTORY, INCLUDING ALL WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, QUIET ENJOYMENT, ACCURACY, OR NON-INFRINGEMENT. WE (AND OUR SUPPLIERS) MAKE NO WARRANTY THAT THE SITE WILL MEET YOUR REQUIREMENTS, WILL BE AVAILABLE ON AN UNINTERRUPTED, TIMELY, SECURE, OR ERROR-FREE BASIS, OR WILL BE ACCURATE, RELIABLE, FREE OF VIRUSES OR OTHER HARMFUL CODE, COMPLETE, LEGAL, OR SAFE. IF APPLICABLE LAW REQUIRES ANY WARRANTIES WITH RESPECT TO THE SITE, ALL SUCH WARRANTIES ARE LIMITED IN DURATION TO 90 DAYS FROM THE DATE OF FIRST USE.

SOME JURISDICTIONS DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSION MAY NOT APPLY TO YOU. SOME JURISDICTIONS DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

7.     LIMITATION ON LIABILITY

TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT SHALL COMPANY (OR OUR SUPPLIERS) BE LIABLE TO YOU OR ANY THIRD PARTY FOR ANY LOST PROFITS, LOST DATA, COSTS OF PROCUREMENT OF SUBSTITUTE PRODUCTS, OR ANY INDIRECT, CONSEQUENTIAL, EXEMPLARY, INCIDENTAL, SPECIAL OR PUNITIVE DAMAGES ARISING FROM OR RELATING TO THESE TERMS OR YOUR USE OF, OR INABILITY TO USE, THE SITE, EVEN IF COMPANY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. ACCESS TO, AND USE OF, THE SITE IS AT YOUR OWN DISCRETION AND RISK, AND YOU WILL BE SOLELY RESPONSIBLE FOR ANY DAMAGE TO YOUR DEVICE OR COMPUTER SYSTEM, OR LOSS OF DATA RESULTING THEREFROM.

TO THE MAXIMUM EXTENT PERMITTED BY LAW, NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, OUR LIABILITY TO YOU FOR ANY DAMAGES ARISING FROM OR RELATED TO THESE TERMS (FOR ANY CAUSE WHATSOEVER AND REGARDLESS OF THE FORM OF THE ACTION), WILL AT ALL TIMES BE LIMITED TO A MAXIMUM OF FIFTY US DOLLARS. THE EXISTENCE OF MORE THAN ONE CLAIM WILL NOT ENLARGE THIS LIMIT. YOU AGREE THAT OUR SUPPLIERS WILL HAVE NO LIABILITY OF ANY KIND ARISING FROM OR RELATING TO THESE TERMS.

SOME JURISDICTIONS DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

8.     TERM AND TERMINATION.  Subject to this Section, these Terms will remain in full force and effect while you use the Site. We may suspend or terminate your rights to use the Site (including your Account) at any time for any reason at our sole discretion, including for any use of the Site in violation of these Terms. Upon termination of your rights under these Terms, your Account and right to access and use the Site will terminate immediately. You understand that any termination of your Account may involve deletion of your User Content associated with your Account from our live databases. Company will not have any liability whatsoever to you for any termination of your rights under these Terms, including for termination of your Account or deletion of your User Content. Even after your rights under these Terms are terminated, the following provisions of these Terms will remain in effect: Sections 2.2 through 2.6, Section 3 and Sections 4 through 10.

9.    **COPYRIGHT POLICY.**

Company respects the intellectual property of others and asks that users of our Site do the same. In connection with our Site, we have adopted and implemented a policy respecting copyright law that provides for the removal of any infringing materials and for the termination, in appropriate circumstances, of users of our online Site who are repeat infringers of intellectual property rights, including copyrights. If you believe that one of our users is, through the use of our Site, unlawfully infringing the copyright(s) in a work, and wish to have the allegedly infringing material removed, the following information in the form of a written notification (pursuant to 17 U.S.C. § 512(c)) must be provided to our designated Copyright Agent:

1.  your physical or electronic signature;
2.  identification of the copyrighted work(s) that you claim to have been infringed;
3.  identification of the material on our services that you claim is infringing and that you request us to remove;
4.  sufficient information to permit us to locate such material;
5.  your address, telephone number, and e-mail address;
6.  a statement that you have a good faith belief that use of the objectionable material is not authorized by the copyright owner, its agent, or under the law; and
7.  a statement that the information in the notification is accurate, and under penalty of perjury, that you are either the owner of the copyright that has allegedly been infringed or that you are authorized to act on behalf of the copyright owner.

Please note that, pursuant to 17 U.S.C. § 512(f), any misrepresentation of material fact (falsities) in a written notification automatically subjects the complaining party to liability for any damages, costs and attorney's fees incurred by us in connection with the written notification and allegation of copyright infringement.

10.    **GENERAL**

**10.1    Changes.**    These Terms are subject to occasional revision, and if we make any substantial changes, we may notify you by sending you an e-mail to the last e-mail address you provided to us (if any), and/or by prominently posting notice of the changes on our Site. You are responsible for providing us with your most current e-mail address. In the event that the last e-mail address that you have provided us is not valid, or for any reason is not capable of delivering to you the notice described above, our dispatch of the e-mail containing such notice will nonetheless constitute effective notice of the changes described in the notice. Continued use of our Site following notice of such changes shall indicate your acknowledgement of such changes and agreement to be bound by the terms and conditions of such changes.

**10.2    Dispute Resolution.**    Please read the following arbitration agreement in this Section (the "**Arbitration Agreement**") carefully. It requires you to arbitrate disputes with Company, its parent companies, subsidiaries, affiliates, successors and assigns and all of their respective officers, directors, employees, agents, and representatives (collectively, the "**Company Parties**") and limits the manner in which you can seek relief from the Company Parties.

**(a)    Applicability of Arbitration Agreement.**    You agree that any dispute between you and any of the Company Parties relating in any way to the Site, the services offered on the Site (the "**Services**") or these Terms will be resolved by binding arbitration, rather than in court, except that (1) you and the Company Parties may assert individualized claims in small claims court if the claims qualify, remain in such court and advance solely on an individual, non-class basis; and (2) you or the Company Parties may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents). **This Arbitration Agreement shall survive the expiration or termination of these Terms and shall apply, without limitation, to all claims that arose or were asserted before you agreed to these Terms (in accordance with the preamble) or any prior version of these Terms.** This Arbitration Agreement does not preclude you from bringing issues to the attention of federal, state or local agencies. Such agencies can, if the law allows, seek relief against the Company Parties on your behalf. For purposes of this Arbitration Agreement,

"**Dispute**" will also include disputes that arose or involve facts occurring before the existence of this or any prior versions of the Agreement as well as claims that may arise after the termination of these Terms.

(b)    **Informal Dispute Resolution.**  There might be instances when a Dispute arises between you and Company. If that occurs, Company is committed to working with you to reach a reasonable resolution. You and Company agree that good faith informal efforts to resolve Disputes can result in a prompt, low-cost and mutually beneficial outcome. You and Company therefore agree that before either party commences arbitration against the other (or initiates an action in small claims court if a party so elects), we will personally meet and confer telephonically or via videoconference, in a good faith effort to resolve informally any Dispute covered by this Arbitration Agreement ("**Informal Dispute Resolution Conference**"). If you are represented by counsel, your counsel may participate in the conference, but you will also participate in the conference.

The party initiating a Dispute must give notice to the other party in writing of its intent to initiate an Informal Dispute Resolution Conference ("**Notice**"), which shall occur within 45 days after the other party receives such Notice, unless an extension is mutually agreed upon by the parties. Notice to Company that you intend to initiate an Informal Dispute Resolution Conference should be sent by email to: legal@corgi.insure, or by regular mail to 425 Bush St, San Francisco, California 94104. The Notice must include: (1) your name, telephone number, mailing address, e-mail address associated with your account (if you have one); (2) the name, telephone number, mailing address and e-mail address of your counsel, if any; and (3) a description of your Dispute.

The Informal Dispute Resolution Conference shall be individualized such that a separate conference must be held each time either party initiates a Dispute, even if the same law firm or group of law firms represents multiple users in similar cases, unless all parties agree; multiple individuals initiating a Dispute cannot participate in the same Informal Dispute Resolution Conference unless all parties agree. In the time between a party receiving the Notice and the Informal Dispute Resolution Conference, nothing in this Arbitration Agreement shall prohibit the parties from engaging in informal communications to resolve the initiating party's Dispute. Engaging in the Informal Dispute Resolution Conference is a condition precedent and requirement that must be fulfilled before commencing arbitration. The statute of limitations and any filing fee deadlines shall be tolled while the parties engage in the Informal Dispute Resolution Conference process required by this section.

(c)    **Arbitration Rules and Forum.**  These Terms evidence a transaction involving interstate commerce; and notwithstanding any other provision herein with respect to the applicable substantive law, the Federal Arbitration Act, 9 U.S.C. § 1 et seq., will govern the interpretation and enforcement of this Arbitration Agreement and any arbitration proceedings. If the Informal Dispute Resolution Process described above does not resolve satisfactorily within 60 days after receipt of your Notice, you and Company agree that either party shall have the right to finally resolve the Dispute through binding arbitration. The Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement. The arbitration will be conducted by JAMS, an established alternative dispute resolution provider. Disputes involving claims and counterclaims with an amount in controversy under $250,000, not inclusive of attorneys' fees and interest, shall be subject to JAMS' most current version of the Streamlined Arbitration Rules and procedures available at http://www.jamsadr.com/rules-streamlined-arbitration/; all other claims shall be subject to JAMS's most current version of the Comprehensive Arbitration Rules and Procedures, available at http://www.jamsadr.com/rules-comprehensive-arbitration/. JAMS's rules are also available at www.jamsadr.com or by calling JAMS at 800-352-5267. A party who wishes to initiate arbitration must provide the other party with a request for arbitration (the "**Request**"). The Request must include: (1) the name, telephone number, mailing address, e-mail address of the party seeking arbitration and the account username (if applicable) as well as the email address associated with any applicable account; (2) a statement of the legal claims being asserted and the factual bases of those claims; (3) a description of the remedy sought and an accurate, good-faith calculation of the amount in controversy in United States Dollars; (4) a statement certifying completion of the Informal Dispute Resolution process as described above; and (5) evidence that the requesting party has paid any necessary filing fees in connection with such arbitration.

If the party requesting arbitration is represented by counsel, the Request shall also include counsel's name, telephone number, mailing address, and email address. Such counsel must also sign the Request. By signing the Request, counsel certifies to the best of counsel's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that: (1) the Request is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (2) the claims, defenses and other legal

contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (3) the factual and damages contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Unless you and Company otherwise agree, or the Batch Arbitration process discussed in Subsection 10.2(h) is triggered, the arbitration will be conducted in the county where you reside. Subject to the JAMS Rules, the arbitrator may direct a limited and reasonable exchange of information between the parties, consistent with the expedited nature of the arbitration. If the JAMS is not available to arbitrate, the parties will select an alternative arbitral forum. Your responsibility to pay any JAMS fees and costs will be solely as set forth in the applicable JAMS Rules.

You and Company agree that all materials and documents exchanged during the arbitration proceedings shall be kept confidential and shall not be shared with anyone except the parties' attorneys, accountants, or business advisors, and then subject to the condition that they agree to keep all materials and documents exchanged during the arbitration proceedings confidential.

**(d)** **Authority of Arbitrator.** The arbitrator shall have exclusive authority to resolve all disputes subject to arbitration hereunder including, without limitation, any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement or any portion of the Arbitration Agreement, except for the following: (1) all Disputes arising out of or relating to the subsection entitled "Waiver of Class or Other Non-Individualized Relief," including any claim that all or part of the subsection entitled "Waiver of Class or Other Non-Individualized Relief" is unenforceable, illegal, void or voidable, or that such subsection entitled "Waiver of Class or Other Non-Individualized Relief" has been breached, shall be decided by a court of competent jurisdiction and not by an arbitrator; (2) except as expressly contemplated in the subsection entitled "Batch Arbitration," all Disputes about the payment of arbitration fees shall be decided only by a court of competent jurisdiction and not by an arbitrator; (3) all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator; and (4) all Disputes about which version of the Arbitration Agreement applies shall be decided only by a court of competent jurisdiction and not by an arbitrator. The arbitration proceeding will not be consolidated with any other matters or joined with any other cases or parties, except as expressly provided in the subsection entitled "Batch Arbitration." The arbitrator shall have the authority to grant motions dispositive of all or part of any claim or dispute. The arbitrator shall have the authority to award monetary damages and to grant any non-monetary remedy or relief available to an individual party under applicable law, the arbitral forum's rules, and these Terms (including the Arbitration Agreement). The arbitrator shall issue a written award and statement of decision describing the essential findings and conclusions on which any award (or decision not to render an award) is based, including the calculation of any damages awarded. The arbitrator shall follow the applicable law. The award of the arbitrator is final and binding upon you and us. Judgment on the arbitration award may be entered in any court having jurisdiction.

**(e)** **Waiver of Jury Trial.** EXCEPT AS SPECIFIED IN SECTION 10.2(A) YOU AND THE COMPANY PARTIES HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY. You and the Company Parties are instead electing that all covered claims and disputes shall be resolved exclusively by arbitration under this Arbitration Agreement, except as specified in Section 10.2(a) above. An arbitrator can award on an individual basis the same damages and relief as a court and must follow these Terms as a court would. However, there is no judge or jury in arbitration, and court review of an arbitration award is subject to very limited review.

**(f)** **Waiver of Class or Other Non-Individualized Relief.** YOU AND COMPANY AGREE THAT, EXCEPT AS SPECIFIED IN SUBSECTION 10.2(H) EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS, AND THE PARTIES HEREBY WAIVE ALL RIGHTS TO HAVE ANY DISPUTE BE BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MASS ACTION BASIS. ONLY INDIVIDUAL RELIEF IS AVAILABLE, AND DISPUTES OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER. Subject to this Arbitration Agreement, the arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by the party's individual claim. Nothing in this paragraph is intended to, nor

shall it, affect the terms and conditions under the Subsection 10.2(h) entitled "Batch Arbitration." Notwithstanding anything to the contrary in this Arbitration Agreement, if a court decides by means of a final decision, not subject to any further appeal or recourse, that the limitations of this subsection, "Waiver of Class or Other Non-Individualized Relief," are invalid or unenforceable as to a particular claim or request for relief (such as a request for public injunctive relief), you and Company agree that that particular claim or request for relief (and only that particular claim or request for relief) shall be severed from the arbitration and may be litigated in the state or federal courts located in the State of California. All other Disputes shall be arbitrated or litigated in small claims court. This subsection does not prevent you or Company from participating in a class-wide settlement of claims.

**(g)    Attorneys' Fees and Costs.**  The parties shall bear their own attorneys' fees and costs in arbitration unless the arbitrator finds that either the substance of the Dispute or the relief sought in the Request was frivolous or was brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)). If you or Company need to invoke the authority of a court of competent jurisdiction to compel arbitration, then the party that obtains an order compelling arbitration in such action shall have the right to collect from the other party its reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing an order compelling arbitration. The prevailing party in any court action relating to whether either party has satisfied any condition precedent to arbitration, including the Informal Dispute Resolution Process, is entitled to recover their reasonable costs, necessary disbursements, and reasonable attorneys' fees and costs.

**(h)    Batch Arbitration.**  To increase the efficiency of administration and resolution of arbitrations, you and Company agree that in the event that there are 100 or more individual Requests of a substantially similar nature filed against Company by or with the assistance of the same law firm, group of law firms, or organizations, within a 30 day period (or as soon as possible thereafter), the JAMS shall (1) administer the arbitration demands in batches of 100 Requests per batch (plus, to the extent there are less than 100 Requests left over after the batching described above, a final batch consisting of the remaining Requests); (2) appoint one arbitrator for each batch; and (3) provide for the resolution of each batch as a single consolidated arbitration with one set of filing and administrative fees due per side per batch, one procedural calendar, one hearing (if any) in a place to be determined by the arbitrator, and one final award ("**Batch Arbitration**").

All parties agree that Requests are of a "substantially similar nature" if they arise out of or relate to the same event or factual scenario and raise the same or similar legal issues and seek the same or similar relief. To the extent the parties disagree on the application of the Batch Arbitration process, the disagreeing party shall advise the JAMS, and the JAMS shall appoint a sole standing arbitrator to determine the applicability of the Batch Arbitration process ("**Administrative Arbitrator**"). In an effort to expedite resolution of any such dispute by the Administrative Arbitrator, the parties agree the Administrative Arbitrator may set forth such procedures as are necessary to resolve any disputes promptly. The Administrative Arbitrator's fees shall be paid by Company.

You and Company agree to cooperate in good faith with the JAMS to implement the Batch Arbitration process including the payment of single filing and administrative fees for batches of Requests, as well as any steps to minimize the time and costs of arbitration, which may include: (1) the appointment of a discovery special master to assist the arbitrator in the resolution of discovery disputes; and (2) the adoption of an expedited calendar of the arbitration proceedings.

This Batch Arbitration provision shall in no way be interpreted as authorizing a class, collective and/or mass arbitration or action of any kind, or arbitration involving joint or consolidated claims under any circumstances, except as expressly set forth in this provision.

**(i)    30-Day Right to Opt Out.**  You have the right to opt out of the provisions of this Arbitration Agreement by sending a timely written notice of your decision to opt out to the following address: 425 Bush St, San Francisco, California 94104, or email to legal@corgi.insure, within 30 days after first becoming subject to this Arbitration Agreement. Your notice must include your name and address and a clear statement that you want to opt out of this Arbitration Agreement. If you opt out of this Arbitration Agreement, all other parts of these Terms will continue to apply to you. Opting out of this Arbitration Agreement has no effect on any other arbitration agreements that you may currently have with us, or may enter into in the future with us.

**(j)** **Invalidity, Expiration.** Except as provided in the subsection entitled "Waiver of Class or Other Non-Individualized Relief", if any part or parts of this Arbitration Agreement are found under the law to be invalid or unenforceable, then such specific part or parts shall be of no force and effect and shall be severed and the remainder of the Arbitration Agreement shall continue in full force and effect. You further agree that any Dispute that you have with Company as detailed in this Arbitration Agreement must be initiated via arbitration within the applicable statute of limitation for that claim or controversy, or it will be forever time barred. Likewise, you agree that all applicable statutes of limitation will apply to such arbitration in the same manner as those statutes of limitation would apply in the applicable court of competent jurisdiction.

**(k)** **Modification.** Notwithstanding any provision in these Terms to the contrary, we agree that if Company makes any future material change to this Arbitration Agreement, you may reject that change within 30 days of such change becoming effective by writing Company at the following address: 425 Bush St, San Francisco, California 94104, or email to legal@corgi.insure. Unless you reject the change within 30 days of such change becoming effective by writing to Company in accordance with the foregoing, your continued use of the Site and/or Services, including the acceptance of products and services offered on the Site following the posting of changes to this Arbitration Agreement constitutes your acceptance of any such changes. Changes to this Arbitration Agreement do not provide you with a new opportunity to opt out of the Arbitration Agreement if you have previously agreed to a version of these Terms and did not validly opt out of arbitration. If you reject any change or update to this Arbitration Agreement, and you were bound by an existing agreement to arbitrate Disputes arising out of or relating in any way to your access to or use of the Services or of the Site, any communications you receive, any products sold or distributed through the Site, the Services, or these Terms, the provisions of this Arbitration Agreement as of the date you first accepted these Terms (or accepted any subsequent changes to these Terms) remain in full force and effect. Company will continue to honor any valid opt outs of the Arbitration Agreement that you made to a prior version of these Terms.

10.3 **Export.** The Site may be subject to U.S. export control laws and may be subject to export or import regulations in other countries. You agree not to export, reexport, or transfer, directly or indirectly, any U.S. technical data acquired from Company, or any products utilizing such data, in violation of the United States export laws or regulations.

10.4 **Disclosures.** Company is located at the address in Section 10.8. If you are a California resident, you may report complaints to the Complaint Assistance Unit of the Division of Consumer Product of the California Department of Consumer Affairs by contacting them in writing at 400 R Street, Sacramento, CA 95814, or by telephone at (800) 952-5210.

10.5 **Electronic Communications.** The communications between you and Company use electronic means, whether you use the Site or send us emails, or whether Company posts notices on the Site or communicates with you via email. For contractual purposes, you (a) consent to receive communications from Company in an electronic form; and (b) agree that all terms and conditions, agreements, notices, disclosures, and other communications that Company provides to you electronically satisfy any legal requirement that such communications would satisfy if it were be in a hardcopy writing. The foregoing does not affect your non-waivable rights.

10.6 **Entire Terms.** These Terms constitute the entire agreement between you and us regarding the use of the Site. Our failure to exercise or enforce any right or provision of these Terms shall not operate as a waiver of such right or provision. The section titles in these Terms are for convenience only and have no legal or contractual effect. The word "including" means "including without limitation". If any provision of these Terms is, for any reason, held to be invalid or unenforceable, the other provisions of these Terms will be unimpaired and the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law. Your relationship to Company is that of an independent contractor, and neither party is an agent or partner of the other. These Terms, and your rights and obligations herein, may not be assigned, subcontracted, delegated, or otherwise transferred by you without Company's prior written consent, and any attempted assignment, subcontract, delegation, or transfer in violation of the foregoing will be null and void. Company may freely assign these Terms. The terms and conditions set forth in these Terms shall be binding upon assignees.

10.7 **Copyright/Trademark Information.** Copyright © 2026 Corgi Insurance Services, Inc. All rights reserved. All trademarks, logos and service marks ("**Marks**") displayed on the Site are our property or the property

of other third parties. You are not permitted to use these Marks without our prior written consent or the consent of such third party which may own the Marks.

**10.8    Contact Information:**

Corgi Legal
Address: 425 Bush Street
San Francisco, California 94104
Telephone: 301-693-2267
Email: legal@corgi.insure

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on June 4, 2026, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

<u>**BY EMAIL**</u>
Travis J. Ferguson
Amy R. Harriman
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King St., 8th Floor
Wilmington, DE 19801
tferguson@mccarter.com
aharriman@mccarter.com

        YOUNG CONAWAY STARGATT
        & TAYLOR, LLP

        */s/ Robert M. Vrana*
        Robert M. Vrana (No. 5666)
        Parks L. Kingery (No. 7416)
        Rodney Square
        1000 North King Street
        Wilmington, DE 19801
        (302) 571-6600
        rvrana@ycst.com
        pkingery@ycst.com

        *Attorneys for Defendants Vouch, Inc., Vouch*
        *Specialty Insurance Services, LLC, Vouch US*
        *Insurance Services Holdings, LLC, Vouch Risk*
        *Management Services, LLC, Kelly Wulff, and*
        *Augmenta Advisory, LLC*