**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TECHNOLOGY RISK RETENTION GROUP, INC.**,** an Arizona corporation, CORGI INSURANCE SERVICES, INC.**,** a Delaware corporation, <br><br> *Plaintiffs,* <br><br>     *v.* <br><br> VOUCH, INC., a Delaware corporation, VOUCH SPECIALTY INSURANCE SERVICES, LLC**,** a Delaware limited liability company, VOUCH US INSURANCE SERVICES HOLDINGS, LLC**,** a Delaware limited liability company, VOUCH RISK MANAGEMENT SERVICES, LLC**,** a Delaware limited liability company, KELLY WULFF**,** an individual, AUGMENTA ADVISORY, LLC, a Delaware limited liability company, <br><br>     *Defendants.* | Civil Action No. 26-426-RGA <br><br> **JURY TRIAL DEMANDED** |

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiffs Technology Risk Retention Group, Inc. ("TRRG") and Corgi Insurance Services, Inc. ("Corgi" and together with TRRG, "Plaintiffs") bring suit against Defendants Vouch, Inc., Vouch Specialty Insurance Services, LLC, Vouch US Insurance Services Holdings, LLC, Vouch Risk Management Services, LLC (collectively, the "Vouch Entity Defendants"), Kelly Wulff (together with the Vouch Entity Defendants, the "Vouch Defendants"), and Augmenta Advisory, LLC ("Augmenta" and collectively with the Vouch Defendants, "Defendants") to hold them liable for misappropriating Plaintiffs' trade secret, proprietary, and commercially sensitive business information, and for false and misleading comparative advertising and disparagement of Plaintiffs' insurance products, including by way of injunction and damages.  Plaintiffs allege the following in support.

1

**PRELIMINARY STATEMENT**

1.      This action centers on corporate espionage by Defendants.  Wulff is the Chief Legal & Administrative Officer of at least Vouch, Inc., one of Plaintiffs' direct competitors in the commercial insurance market for technology companies.   The Vouch Defendants, upon information and belief, orchestrated a scheme for Wulff to engage with Corgi's proprietary underwriting platform, extract trade secrets and confidential business information that cost millions of dollars to develop, and deliver that intelligence to the Vouch Defendants.  Wulff formed a Delaware shell entity (Augmenta); had Augmenta obtain an insurance policy from Plaintiffs through a fraudulent application; extracted Corgi's proprietary underwriting methodology, custom policy forms, and pricing architecture; and canceled the resulting policy within days.

2.      The foregoing scheme was deliberate and methodical.  Wulff did not merely browse Corgi's website for information.  She went through the full underwriting flow—answering over one hundred proprietary risk-assessment questions across four separate coverage lines—to extract the maximum amount of proprietary information Corgi's platform could generate. She selected every available line of coverage. She provided detailed responses engineered to trigger policy issuance. She then canceled the resulting policy immediately, having obtained Plaintiffs' custom policy forms, proprietary underwriting logic, pricing architecture, and coverage structures—the product of years of investment and an important aspect of Plaintiffs' competitive position.

3.      The vehicle for this scheme—Augmenta—is a shell Delaware entity.  Augmenta was formed the same day Wulff submitted the insurance application on its behalf.  Augmenta had no federal employer identification number. It had no revenue. It had no clients. It had no website. It had no business operations of any kind. It, upon information and belief, existed for one purpose: to provide the Vouch Defendants with a facially legitimate identity through which to access Corgi's platform without revealing that the applicant was, in reality, a direct Corgi competitor.

4.      Corgi suspects that Vouch used the confidential and proprietary information it misappropriated to support deceptive trade practices, among other inappropriate conduct. Recently, Vouch's sales team made false and misleading statements regarding Corgi's insurance offerings to a prospective customer when comparing Corgi's offerings to the offerings of Vouch. Vouch's salesperson falsely and misleadingly suggested that Corgi's insurance products are illusory and merely "check a box" and do not pay valid covered claims.  The intent behind Vouch's statements were obvious: to influence prospective customers to select Vouch product over Corgi products by implying that Corgi's products are unreliable, inferior, and/or illusory.

5.      Plaintiffs bring this action to recover their stolen trade secret, proprietary, and commercially sensitive business information, to enjoin Defendants from using Plaintiffs' trade secret, proprietary, and commercially sensitive business information, and to otherwise hold Defendants accountable for their deceptive trade practices and misconduct, including by way of monetary damages and injunctive relief.

## **PARTIES**

### *Plaintiffs*

6.      Plaintiff Technology Risk Retention Group, Inc. is an insurance company organized under the laws of Arizona, with its principal office at 4539 N 22nd St., Suite #5341, Phoenix, Arizona 85016. TRRG is a Risk Retention Group that underwrites commercial general liability insurance policies distributed through Corgi's platform. TRRG issued the policy at the center of this dispute and owns proprietary rights in the policy forms, coverage language, and issuance documentation bearing the CORG designation.

7.      Plaintiff Corgi Insurance Services, Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 425 Bush Street, San Francisco, California 94108. Corgi operates a technology-enabled commercial insurance platform at www.corgi.insure,

3

offering proprietary insurance products—including Commercial General Liability, Directors & Officers, Cyber Liability, and Technology Errors & Omissions—to technology companies and startups nationwide. Corgi developed and owns the proprietary underwriting questionnaire, platform workflow, pricing methodology, and coverage architecture at issue in this action.

### The Vouch Defendants

8.      The Vouch Entity Defendants operate as a single integrated enterprise for purposes of the commercial insurance market.  They share common ownership, common management, common office space, common branding, and a unified business purpose.  Plaintiffs name as Defendants each entity in the Vouch corporate family because each entity operates as part of an integrated enterprise that stood to benefit from, and upon information and belief did benefit from, the misappropriated trade secrets, proprietary, and commercially sensitive business information.

9.      Defendant Vouch, Inc. is a Delaware corporation and the parent corporation of the Vouch enterprise.  Vouch, Inc. provides commercial insurance products to technology companies and startups—the identical market served by Plaintiffs.  Vouch, Inc. is a direct competitor of Plaintiffs and the primary intended beneficiary of the misappropriated information alleged herein. Vouch, Inc. may be served with process at its Delaware registered agent: Corporation Trust Company, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

10.     Defendant Vouch Specialty Insurance Services, LLC is a Delaware limited liability company and the active brokerage entity within the Vouch corporate family. Upon information and belief, this entity is the member of Vouch US Insurance Services Holdings, LLC and is involved in the distribution and placement of insurance products on behalf of the Vouch enterprise. Vouch Specialty Insurance Services, LLC may be served with process at its Delaware registered agent: Corporation Trust Company, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4

11.    Defendant Vouch US Insurance Services Holdings, LLC is a Delaware limited liability company that serves as an intermediate holding company within the Vouch corporate structure, sitting between Vouch, Inc. and the operating entities.  Naming this entity is necessary to avoid any corporate-veil gaps between the parent and the operating subsidiaries.  Vouch US Insurance Services Holdings, LLC may be served with process at its Delaware registered agent: Corporation Trust Company, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

12.    Defendant Vouch Risk Management Services, LLC is a Delaware limited liability company within the Vouch corporate family. Upon information and belief, this entity provides risk management, advisory, or operational services for the Vouch enterprise's insurance business. Vouch Risk Management Services, LLC may be served with process at its Delaware registered agent: Corporation Trust Company, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

13.    Defendant Kelly Wulff is an individual who, upon information and belief, resides in San Francisco, California. Wulff has served as Vouch, Inc.'s Chief Legal & Administrative Officer since September 2025.  Wulff previously served as Vouch Inc.'s General Counsel from December 2018 through September 2025.  In her capacity as Chief Legal & Administrative Officer of Vouch, Inc., Wulff exercised authority across the Vouch enterprise and had access to, and acted for the benefit of, each Vouch entity in carrying out the scheme alleged herein.

14.    Wulff acted within the scope of her employment and for the benefit of the Vouch Entity Defendants in carrying out the acts alleged herein.  As Chief Legal & Administrative Officer, Wulff was responsible for legal strategy, regulatory compliance, corporate governance, and risk management across the Vouch enterprise. Wulff may be served with process at Vouch,

Inc.'s Delaware registered agent: Corporation Trust Company, The Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

### *Defendant Augmenta Advisory*

15.     Defendant Augmenta Advisory, LLC is a Delaware limited liability company, with a formation date of February 10, 2026.  Its registered agent is Legalinc Corporate Services Inc., located at 131 Continental Drive, Suite 305, Newark, Delaware 19713. Upon information and belief, Augmenta Advisory has never conducted any legitimate business, has no clients, no public presence, no employees other than Wulff, and was created solely as an instrumentality of the scheme alleged herein.  Augmenta Advisory is the alter ego of the Vouch Defendants.

### JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiffs' claims arise under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.,* and the Lanham Act, 15 U.S.C. § 1125(a). The Court also has jurisdiction over the Lanham Act claim under 28 U.S.C. § 1338(a).  This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over all Defendants as the Vouch Entity Defendants and Augmenta are all Delaware entities.  Wulff is subject to personal jurisdiction in Delaware by virtue of her officer position at a Delaware corporation (Vouch, Inc.).  Alternatively, Wulff is subject to conspiracy jurisdiction in Delaware, given the implementation and use of Augmenta in the misappropriation scheme alleged herein.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as the Vouch Entity Defendants and Augmenta are Delaware entities; all Defendants are subject to personal jurisdiction in Delaware; and a substantial part of the events giving rise to the claims, including Augmenta's formation for purposes of submitting a fraudulent application, occurred in Delaware.

## FACTUAL ALLEGATIONS

19.    Plaintiffs are a technology-enabled insurance platform that underwrites and distributes commercial insurance products to technology companies and startups. Corgi's platform at www.corgi.insure allows applicants to complete an underwriting questionnaire, receive a quote, bind coverage, and access policy documents through an integrated online workflow.

20.    TRRG underwrites the commercial general liability policies distributed through Corgi's platform. Together, Plaintiffs' platform, underwriting methodology, policy forms, and pricing architecture represent years of development and millions of dollars in investment.

### A. Plaintiffs and the Vouch Defendants Are Direct Competitors

21.    The Vouch Defendants operate in the identical market segment as Plaintiffs, brokering commercial insurance products—including general liability, directors and officers, cyber, and professional liability coverage—to technology companies and startups.

22.    The Vouch enterprise and Plaintiffs compete head-to-head for the same customers, in the same market, brokering substantially similar coverage lines.

23.    The commercial insurance market for technology companies is intensely competitive. The ability to differentiate on underwriting precision, pricing accuracy, coverage design, and platform experience is the primary basis of competition.  A competitor that obtains a rival's proprietary underwriting logic, custom policy forms, pricing structures, and workflow architecture gains a decisive and unfair competitive advantage.

### B. Plaintiffs' Trade Secrets and Proprietary Information

24.    Plaintiffs have invested substantial time, capital, and expertise developing proprietary business information that constitutes trade secrets under 18 U.S.C. § 1839(3) and 6 Del. C. § 2001(4). Plaintiffs' exclusive use and access to the proprietary information give it a significant competitive advantage. This trade secret information derives independent economic

7

value—worth millions of dollars—from not being generally known to, and not being readily ascertainable through proper means by, Plaintiffs' competitors.

25.     Plaintiffs' trade secrets include, but are not limited to, the following categories (collectively, the "Trade Secret Information"):

(a) **Underwriting Questionnaire and Risk Assessment Logic.** Corgi's proprietary questionnaire encompasses over one hundred questions spanning multiple coverage lines. The specific questions asked, their sequencing, the branching logic, the risk factors assessed, and the weighting methodology are all proprietary. This questionnaire logic represents Plaintiffs' core intellectual property in applicant risk assessment and is not available to the public or to competitors.

(b) **Custom Policy Forms.** Plaintiffs' policy forms—including CORG-CGL-0001 (Master Declarations Page) and CORG-CGL-0100 (Commercial General Liability Insurance Policy)—are proprietary forms. These are _not_ standard Insurance Services Office ("ISO") forms commercially available to the industry. They contain unique coverage language, exclusion structures, insuring agreement terms, retention mechanics, and definitional provisions that embody Plaintiffs' proprietary approach to coverage design for technology companies.

(c) **Pricing Methodology and Structures.** The algorithms, formulas, and methodologies by which Plaintiffs calculate premiums, retentions, limits, sublimits, and optional coverage pricing for particular risk profiles. This includes the specific retention amounts, limit structures, and sublimit ratios—information that would allow a competitor to precisely undercut Plaintiffs' pricing or reverse-engineer its risk models.

8

(d) **Platform Workflow Architecture.** The technology, user interface design, information architecture, and process flow by which Corgi's platform receives, evaluates, quotes, binds, and issues insurance applications.

(e) **Coverage Architecture and Product Design.** The specific combination of coverage lines offered (CGL, D&O, Cyber, Tech E&O), the sublimit structures, the available endorsements and optional coverages (including AI-related risk coverage), and the manner in which multiple lines are packaged and cross-sold.

(f) **Issuance Documentation Package.** The format, content, structure, and presentation of declarations pages, policy jackets, coverage summaries, schedule of forms, and notice provisions provided to insureds upon binding.

26.    As the Trade Secret Information was uniquely developed to support Plaintiffs' proprietary approach to coverage design for technology companies, Plaintiffs are the creators and owners of the Trade Secret Information.

27.    Plaintiffs have taken reasonable measures to protect the secrecy of the Trade Secret Information, including: (a) restricting access to Corgi's underwriting platform through acceptance of binding Terms of Use; (b) including express prohibitions against using the platform for competitive purposes (Section 2.2(c)); (c) maintaining proprietary policy forms as confidential documents disclosed only to applicants and policyholders and withholding access from the general public; (d) restricting internal access to underwriting logic and pricing methodology to authorized personnel; and (e) not publicly disclosing questionnaire logic, pricing algorithms, or custom coverage structures.

### C. Defendants' Scheme to Misappropriate Plaintiffs' Trade Secrets

28.    On February 10, 2026, Augmenta was formed as a Delaware limited liability company. On that same day—February 10, 2026—a quote questionnaire bearing Quote Number

9

79OM9KUJ was submitted through Corgi's underwriting platform in the name of Augmenta Advisory, LLC. The submission identified "Kelly Wulff" as the applicant and sole director.

29.    The application contained the following representations, each designed to present the appearance of a legitimate insurance applicant:

(a) Augmenta's business start date was February 10, 2026;

(b) Augmenta had one full-time employee and zero part-time employees;

(c) Augmenta had no federal employer identification number;

(d) Augmenta had zero revenue in the prior twelve months and projected revenue of $200,000;

(e)  Augmenta's estimated annual payroll was $100,000;

(f)  Augmenta would be providing "Advisory services;"

(g)  Augmenta had no prior claims, lawsuits, or official inquiries;

(h)  Augmenta had never carried any similar insurance;

(i)  No insurance company had ever declined, canceled, or non-renewed any policy for Augmenta; and

(j)  Augmenta agreed to the Terms and Conditions of Corgi's platform.

30.    Augmenta's application selected *four separate coverage lines*: Commercial General Liability, Directors & Officers, Cyber Liability, and Technology Errors & Omissions. For each line, the application provided detailed responses to extensive proprietary underwriting questions covering cybersecurity practices (MFA requirements, vendor security, data handling, regulatory compliance), artificial intelligence use, corporate governance (board composition, financial audits, compliance infrastructure), claims history, and financial condition. The selection of all four coverage lines ensured Corgi's platform would generate the maximum breadth of proprietary underwriting information, risk assessment output, and policy documentation.

31.     Augmenta's application requested specific limits and retentions across all four lines: $1,000,000/$2,000,000 for CGL with a $2,000 retention; $1,000,000/$1,000,000 for D&O with a $5,000 retention; $1,000,000/$1,000,000 for Cyber with a $20,000 retention; and $1,000,000/$1,000,000 for Tech E&O with a $5,000 retention. These are precise, knowledgeable selections of an insurance industry professional, not a novice buyer for a new advisory firm.

32.     Based on Augmenta's application, Plaintiffs issued Commercial General Liability Policy No. CG-DE-26-000011-01 to Augmenta for the period February 10, 2026 through February 10, 2027, underwritten by TRRG and brokered through Corgi's platform.  In connection with the issuance, Plaintiffs provided Augmenta with proprietary policy declarations (CORG-CGL-0001), custom policy form (CORG-CGL-0100), and related issuance materials—all constituting Trade Secret Information.

33.     The policy states on its face that it was issued "in reliance upon the statements made in the Application, which is incorporated into and forms a part of this Policy," and that the "Policy is void in any case of material misrepresentation, concealment or fraud by the Insured as it relates to this insurance."

34.     Within days of obtaining the policy and its accompanying proprietary materials, Wulff—using the email address kellywulff+Augmenta@gmail.com through Corgi's platform— requested the policy be canceled "effective immediately," stating she "no longer require[d] the coverage."  When Corgi personnel did not immediately respond, Wulff followed up: "What are next steps?"  The policy was thereafter canceled by Plaintiffs.

35.     Wulff's urgency to cancel the policy for an entity that had only existed for a few days and never conducted any business underscores the policy's purpose had already been served.

11

### D. The Totality of the Circumstances Compels the Inference of Pretextual Access

36.     The foregoing facts, taken together, demonstrate that Augmenta's application was pretext to extract Plaintiffs' Trade Secret Information for the benefit of the Vouch Defendants.

37.     No innocent explanation accounts for this constellation of facts. A legitimate insurance buyer does not form an entity, apply for insurance, bind a policy, and cancel it within days. A legitimate advisory firm does not operate without an EIN. A legitimate applicant does not select four coverage lines for a company with no operations. And a legitimate applicant does not conceal that she is the Chief Legal Officer of the insurer's direct competitor.

38.     Moreover, it would be unreasonable to believe that the Chief Legal Officer of the Vouch enterprises, Wulff, would legitimately look to purchase insurance from Plaintiffs, a direct competitor to the Vouch entities, and not her employer who competes in the same insurance space.

### E. Wulff Acted for the Benefit of the Vouch Enterprise

39.     Wulff was the Vouch enterprise's most senior legal officer at all relevant times, with authority across Vouch, Inc. and its subsidiaries. Upon information and belief, the Vouch Entity Defendants directed Wulff to create Augmenta for purposes of obtaining the Trade Secret Information and delivering it to the Vouch Defendants for their commercial benefit. Wulff's actions were thus within the scope of her employment. In the alternative, the Vouch Entity Defendants ratified Wulff's misconduct by accepting and retaining the benefits of the misappropriated information.

40.     The Trade Secret Information has immense economic value to the Vouch Entity Defendants as direct competitors of Plaintiffs. A competitor in possession of this information could: reverse-engineer Plaintiffs' underwriting models; replicate or improve upon its own coverage design; undercut Plaintiffs' pricing with surgical precision; accelerate its own product development by years; and systematically erode Plaintiffs' competitive position.

### F. Defendants' False and Misleading Comparative Statements Regarding Corgi's Insurance

39.     Defendants' misconduct did not end with its pretextual access to Corgi's underwriting platform. Plaintiffs have since learned that the Vouch Entity Defendants have also used false and misleading comparative sales communications to discourage customers and prospective customers from purchasing insurance through Corgi.

40.     Recently, a representative of Vouch sent a written sales communication (the "False and Misleading Communication") to a customer or prospective customer (the "Prospect") who was then evaluating and comparing Vouch's insurance offering against Corgi's insurance offering.

41.     The False and Misleading Communication was commercial in nature, was made for the purpose of influencing the Prospect's insurance-purchasing decision, expressly compared Vouch's insurance offering to Corgi's offering, and identified Corgi by name.

42.     Plaintiffs do not challenge the Vouch Entity Defendants' right to make truthful, substantiated comparisons regarding price, limits, retentions, deductibles, or specific coverage terms, or to note accurately that TRRG is a risk retention group. Plaintiffs challenge the Vouch Entity Defendants' false and misleading statement that the difference between the parties' products is "the difference between insurance that checks a box and insurance that actually pays."

43.     In context, that statement conveyed the false and misleading factual message that Corgi's insurance is merely paper coverage, is commercially unreliable, and does not actually pay valid covered claims.

44.     That factual statement is materially false. Corgi and TRRG issue binding insurance coverage. TRRG is a licensed risk retention group obligated to satisfy all valid covered claims. Corgi's insurance products are not illusory, do not merely "check a box," and are not deficient on

13

the ground that they do not "actually pay." The Vouch Entity Defendants had no factual basis to state or imply that Corgi's insurance does not satisfy all valid covered claims.

45. The challenged statement was not generalized sales puffery. It was made in a direct, side-by-side comparative sales communication that identified Corgi by name, addressed specific coverage terms, and urged the Prospect to choose Vouch over Corgi. In that setting, the statement would reasonably be understood by customers as a factual assertion about the reliability, claim-paying value, and commercial fitness of Corgi's insurance.

46. The challenged statement was material. Claim-paying reliability is among the central considerations on which customers decide whether to purchase commercial insurance. A statement implying that a competitor's insurance does not actually pay is likely to influence, and was intended to influence, purchasing decisions.

47. The challenged statement was made in commercial advertising or promotion and in interstate commerce. The Vouch Entity Defendants and Corgi compete for customers in the commercial insurance market, including technology and startup customers. The statement was made to induce the Prospect not to purchase insurance through Corgi and instead to purchase insurance through Vouch. Upon information and belief, the Vouch Entity Defendants have made the same or substantially similar statements to other customers and prospective customers as part of a comparative sales effort. Plaintiffs will seek discovery concerning the scope of that effort, the recipients of the challenged statements, and the Vouch personnel involved.

48. As a direct and proximate result of the Vouch Entity Defendants' false and misleading comparative statements, Plaintiffs have suffered and continue to suffer injury to their commercial reputation, goodwill, and customer relationships, and have lost or are likely to lose sales, renewals, and business opportunities in an amount to be proven at trial.

49.     Plaintiffs seek injunctive and corrective relief prohibiting the Vouch Entity Defendants from stating or implying that Corgi's insurance merely "checks a box," does not "actually pay," is illusory, or is not valid, reliable, or commercially fit insurance.

### COUNT I – MISAPPROPRIATION OF TRADE SECRETS
(Pursuant to 18 U.S.C. § 1836 *et seq.* — Against All Defendants)

41.     .Plaintiffs incorporate by reference all preceding paragraphs.

42.     The Trade Secret Information constitutes "trade secrets" within the meaning of 18 U.S.C. § 1839(3).

43.     Defendants misappropriated the Trade Secret Information within the meaning of 18 U.S.C. § 1839(5) by acquiring it through improper means—creating a shell entity, submitting a pretextual application, inducing Plaintiffs to issue a policy and disclose Trade Secret Information in reliance thereon, and immediately canceling the policy once the information was extracted.

44.     The Trade Secret Information relates to products or services used in interstate commerce within the meaning of 18 U.S.C. § 1836(b)(1).

45.     The misappropriation was willful and malicious. Defendants engaged in a deliberate and concealed scheme to misappropriate the Trade Secret Information through Wulff, in her capacity as Chief Legal Officer of the Vouch enterprise, and Augmenta.

46.     Trade secrets, once misappropriated, cannot be unlearned.  Plaintiffs nevertheless face ongoing and irreparable harm as a result of Defendants' scheme to misappropriate the Trade Secret Information, in that Defendants could use the misappropriated Trade Secret Information in their own competing insurance products in direct competition against Plaintiffs.  Plaintiffs thus require injunctive relief to ensure that the misappropriated Trade Secret Information is not used.

47.     Moreover, as a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered and continue to suffer substantial damages in an amount to be determined at trial.

15

48.    Plaintiffs are entitled to: (a) injunctive relief under § 1836(b)(3)(A); (b) actual loss and unjust enrichment damages under § 1836(b)(3)(B); (c) exemplary damages of up to two times the award under § 1836(b)(3)(C); and (d) reasonable attorney's fees under § 1836(b)(3)(D)

## COUNT II — MISAPPROPRIATION OF TRADE SECRETS (DUTSA)

(6 *Del. C.* § 2001 et seq. - Against All Defendants)

49.    Plaintiffs incorporate by reference all preceding paragraphs.

50.    The Trade Secret Information constitutes "trade secrets" under 6 *Del. C.* § 2001(4).

51.    Defendants misappropriated the Trade Secret Information within the meaning of 6 *Del. C.* § 2001(2) by acquiring it through improper means—creating a shell entity, submitting a pretextual application, inducing Plaintiffs to issue a policy and disclose Trade Secret Information in reliance thereon, and immediately canceling the policy once the information was extracted.

52.    The misappropriation was willful and malicious. Defendants engaged in a deliberate and concealed scheme to misappropriate the Trade Secret Information through Wulff, in her capacity as Chief Legal Officer of the Vouch enterprise, and Augmenta.

53.    Plaintiffs face ongoing and irreparable harm and competitive disadvantage resulting from Defendants' misappropriation of the Trade Secret Information, in that Defendants now hold misappropriated Trade Secret Information for use in their own competing insurance products in direct competition against Plaintiffs.  Moreover, as a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered and continue to suffer substantial damages in an amount to be determined at trial.

54.    Plaintiffs are entitled to injunctive relief, actual damages, unjust enrichment damages, exemplary damages, and attorney's fees under 6 *Del. C.* §§ 2002–2004.

## COUNT III — CIVIL CONSPIRACY

(Against all Defendants)

55.    Plaintiffs incorporate by reference all preceding paragraphs.

56.    Defendants agreed to misappropriate the Trade Secret Information. The Vouch Entity Defendants directed Wulff to form Augmenta and then submit a pretextual application to the Plaintiffs' platform for purposes of extracting proprietary competitive intelligence.

57.    Augmenta and Wulff did indeed misappropriate the Trade Secret Information by going through Plaintiffs' entire underwriting flow and inducing Plaintiffs to issue a policy.

58.    Wulff then requested the policy be canceled following her receipt and, upon information of belief, delivery of the Trade Secret Information to the Vouch Entity Defendants.

59.    Plaintiffs have been damaged as a result of Defendants' civil conspiracy in an amount to be determined at trial.

## COUNT IV — UNJUST ENRICHMENT

(In the Alternative to Counts I and II - Against All Defendants)

60.    Plaintiffs incorporate by reference all preceding paragraphs.

61.    Defendants obtained Plaintiffs' proprietary and commercially sensitive business information through a pretextual scheme that circumvented normal market and protective mechanisms.

62.    Defendants procured the proprietary and commercially sensitive business information under the guise of Augmenta, submitting a false and illegitimate insurance application that led to the issuance of an insurance policy.

63.    Defendants immediately canceled the issued policy, yet retained the benefit of the proprietary and commercially sensitive business information they procured for the benefit of the Vouch Entity Defendants' competing insurance business.

17

64. Plaintiffs are entitled to restitution for Defendants' ill-gotten gains, including, without limitation, disgorgement of any profits derived from Plaintiffs' proprietary and commercially sensitive business information.

## COUNT V — FRAUD AND FRAUDULENT INDUCEMENT

(Against all Defendants)

65. Plaintiffs incorporate by reference all preceding paragraphs.

66. On February 10, 2026, Augmenta, acting through Wulff in her capacity as Chief Legal Officer of the Vouch Entity Defendants, submitted an insurance application to Plaintiffs through Corgi's proprietary underwriting platform at www.corgi.insure that implicitly represented a bona fide request for coverage. This submission was false. It was a pretext to obtain Plaintiffs' proprietary materials. Wulff further concealed: (a) her position as Chief Legal & Administrative Officer of Vouch; (b) her competitive purpose; and (c) misrepresented Augmenta's purpose.

67. Plaintiffs relied on Defendants' misrepresentations and concealment to issue a policy and disclose the Trade Secret Information. Had Plaintiffs known the applicant was a shell entity controlled by the Vouch Entity Defendants, a direct competitor, they would not have issued the policy or disclosed any proprietary information.

68. Plaintiffs seek to rescind the policy as a result of Defendants' fraud. Plaintiffs have also suffered damages in an amount to be determined at trial resulting from Defendants' fraud.

## COUNT VI — DECLARATORY RELIEF

(In the Alternative to Count VII - Against all Defendants)

69. Plaintiffs incorporate by reference all preceding paragraphs.

70. As detailed above, Plaintiffs issued Policy No. CG-DE-26-000011-01 to Augmenta "in reliance upon the statements made in the Application[.]" Plaintiffs' website Terms of Use provide that the policy is "void in any case of material misrepresentation, concealment or fraud."

71.     Notwithstanding Plaintiffs' cancellation of the policy upon the request of Wulff, in furtherance of Defendants' conspiracy to misappropriate the Trade Secret Information, an actual controversy exists regarding the legitimacy of the policy that Plaintiffs issues.

72.     Plaintiffs request a declaration under 28 U.S.C. § 2201 that the Policy is void ab initio as a result of Defendants' fraud.

### COUNT VII — FALSE ADVERTISING UNDER THE LANHAM ACT
(15 U.S.C. § 1125(a)(1)(B) - Against the Vouch Entity Defendants)

73.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

74.     Corgi and the Vouch Entity Defendants are direct competitors in the commercial insurance market, including for technology-company and startup insurance customers.

75.     In commercial advertising or promotion, the Vouch Entity Defendants made false and misleading statements of fact concerning the nature, characteristics, quality, and commercial reliability of Corgi's insurance products.

76.     Specifically, the Vouch Entity Defendants told a customer or prospective customer that the difference between Vouch and Corgi was the difference between insurance that "checks a box" and insurance that "actually pays." In context, that statement falsely and misleadingly conveyed that Corgi's insurance is merely paper coverage, is commercially unreliable, and does not actually pay valid covered claims.

77.     The challenged statement was false or, at minimum, misleading. Corgi's insurance is binding insurance coverage, not merely box-checking coverage, and the Vouch Entity Defendants lacked any factual basis to state or imply that Corgi's insurance does not pay valid covered claims.

78.     The statement was material because claim-paying reliability is central to a customer's decision to purchase commercial insurance, and the statement actually deceived or had the tendency to deceive a substantial segment of its audience.

79.     The statement was made in interstate commerce and was intended to influence customers' insurance-purchasing decisions.

80.     Plaintiffs have been and are likely to be injured as a direct and proximate result of the Vouch Entity Defendants' false and misleading statements, including through lost sales, lost prospective business, harm to goodwill, harm to commercial reputation, and customer confusion regarding the quality and reliability of Corgi's insurance products.

81.     Plaintiffs are entitled to injunctive relief, corrective relief, damages, disgorgement of the Vouch Entity Defendants' profits, costs, attorneys' fees to the extent permitted by law, and all other relief available under 15 U.S.C. § 1117 and applicable law.

## COUNT VIII — DELAWARE DECEPTIVE TRADE PRACTICES ACT
(6 Del. C. § 2532 - Against the Vouch Entity Defendants)

82.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

83.     The Vouch Entity Defendants engaged in deceptive trade practices by disparaging Corgi's goods, services, and business through false or misleading representations of fact, in violation of 6 Del. C. § 2532.

84.     Specifically, the Vouch Entity Defendants falsely and misleadingly represented to a customer or prospective customer that Corgi's insurance merely "checks a box," while Vouch's insurance "actually pays." In context, that statement conveyed the false and misleading factual message that Corgi's insurance is commercially unreliable and does not pay valid covered claims.

85.    The challenged statement was made in a commercial sales communication for the purpose of influencing the customer's or prospective customer's purchasing decision and diverting business from Corgi to Vouch.

86.    Plaintiffs have suffered and are likely to suffer harm to their commercial reputation, goodwill, and customer relationships as a result of the Vouch Entity Defendants' deceptive trade practices.

87.    Plaintiffs are entitled to injunctive relief, costs, attorneys' fees to the extent permitted by law, and all other relief available under the Delaware Deceptive Trade Practices Act and applicable law.

## COUNT IX - COMMERCIAL DISPARAGEMENT / TRADE LIBEL

(Against the Vouch Entity Defendants)

88.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

89.    The Vouch Entity Defendants published false and disparaging statements concerning Corgi's insurance products and services to at least one third party, including a customer or prospective customer.

90.    The Vouch Entity Defendants stated that the difference between Vouch and Corgi was the difference between insurance that "checks a box" and insurance that "actually pays." In context, that statement disparaged the quality, reliability, claim-paying value, and commercial fitness of Corgi's insurance products.

91.    The challenged statement was false and misleading because Corgi's insurance is binding insurance coverage and the Vouch Entity Defendants had no basis to state or imply that Corgi's insurance does not pay valid covered claims.

21

92.    The Vouch Entity Defendants published the statement with knowledge of its falsity or with reckless disregard for its truth or falsity, and for the purpose of diverting business from Corgi to Vouch.

93.    The statement caused, and is likely to continue causing, special and pecuniary harm to Plaintiffs, including lost sales, lost prospective customers, lost renewals, impairment of customer relationships, and harm to goodwill and commercial reputation, in an amount to be proven at trial.

94.    Plaintiffs are entitled to actual damages, special damages, punitive damages to the extent available, injunctive relief, costs, and all other relief permitted by law.

## COUNT X - TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

(Against the Vouch Entity Defendants)

95.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

96.    Plaintiffs had existing and prospective economic relationships with customers and prospective customers seeking commercial insurance coverage, including technology-company and startup customers, with a reasonable probability of resulting business.

97.    The Vouch Entity Defendants knew of those relationships or, at minimum, knew that the recipients of their comparative sales communications were evaluating Corgi's insurance offering and represented prospective economic opportunities for Corgi.

98.    The Vouch Entity Defendants intentionally interfered with those relationships by making false and misleading statements implying that Corgi's insurance merely "checks a box" and does not "actually pay."

22

99.     The Vouch Entity Defendants' conduct was wrongful by means independent of the interference itself, including because it constituted false advertising, deceptive trade practices, and commercial disparagement, and therefore is not protected by any privilege to compete.

100.    The Vouch Entity Defendants' interference caused actual disruption or a reasonable probability of disruption to Plaintiffs' economic relationships.

101.    Plaintiffs have suffered damages as a direct and proximate result of the Vouch Entity Defendants' interference, including lost business, lost prospective customers, impairment of customer relationships, harm to goodwill, and harm to commercial reputation.

102.    Plaintiffs are entitled to compensatory damages, punitive damages to the extent permitted by law, injunctive relief, costs, and all other relief permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, jointly and severally, and award the following relief:

(A)     Judgment in favor of Plaintiffs and against Defendants on all Counts;

(B)     Permanent Injunction prohibiting use, disclosure, or dissemination of the Trade Secret Information, destruction of all copies, and prohibiting the Vouch Defendants from using any product derived from the Trade Secret Information;

(C)     Compensatory Damages for all losses, including trade secret misappropriation, fraud, civil conspiracy, and unfair competition;

(D)     Unjust Enrichment Damages and disgorgement of all profits and benefits;

(E)     Exemplary Damages of up to two times the compensatory damages under 18 U.S.C. § 1836(b)(3)(C) and 6 Del. C. § 2003(b);

(F)     Punitive Damages to the extent permitted by applicable law;

(G)     A declaration that Policy No. CG-DE-26-000011-01 is void ab initio;

23

(H)    An Order requiring Defendants to identify all persons to whom Trade Secret Information was disclosed and provide a full accounting;

(I)    Reasonable Attorney's Fees and Costs under all applicable provisions;

(J)    Pre-Judgment and Post-Judgment Interest;

(K)    Injunctive relief enjoining the Vouch Entity Defendants and all persons acting in concert with them from stating or implying that Corgi's insurance merely "checks a box," does not "actually pay," is illusory, is not valid insurance, or is commercially unreliable;

(L)    An Order requiring the Vouch Entity Defendants to identify all persons to whom they made the challenged statements or substantially similar statements;

(M)    Corrective notice or corrective advertising sufficient to cure the marketplace confusion and reputational harm caused by the challenged statements;

(N)    Disgorgement of the Vouch Entity Defendants' profits attributable to the false and misleading comparative statements, together with corrective-advertising and reputational damages; and

(O)    Such Other and Further Relief as this Court deems just and equitable.

Dated: June 18, 2026                         **McCarter & English, LLP**

                                             */s/ Travis J. Ferguson*_____
                                             Travis J. Ferguson (No. 6029)
                                             Amy R. Harriman (No. 7602)
                                             Renaissance Centre
                                             405 North King St., 8th Floor
                                             Wilmington, Delaware 19801
                                             (t) 302-984-6300
                                             (e) tferguson@mccarter.com
                                                  aharriman@mccarter.com

                                             *Counsel for Plaintiffs*
                                             *Technology Risk Retention Group, Inc.*
                                             *and Corgi Insurance Services, Inc.*

24