**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TECHNOLOGY RISK RETENTION GROUP, INC.**,** an Arizona corporation, CORGI INSURANCE SERVICES, INC.**,** a Delaware corporation,

*Plaintiffs,*

v.

VOUCH, INC., a Delaware corporation, VOUCH SPECIALTY INSURANCE SERVICES, LLC**,** a Delaware limited liability company, VOUCH  US INSURANCE SERVICES  HOLDINGS,  LLC**,** a Delaware  limited liability  company, VOUCH  RISK MANAGEMENT SERVICES, LLC**,** a Delaware limited liability company, KELLY  WULFF**,**  an individual,  AUGMENTA ADVISORY, LLC, a Delaware limited liability company,

*Defendants.*

C.A. No. 1:26-cv-00426-RGA

**<u>SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION</u>**

July 10, 2026

OF COUNSEL:

KEKER, VAN NEST & PETERS LLP
Warren A. Braunig
Cody Gray
Jacqueline Concilla
Michaela Firmage
633 Battery Street
San Francisco, CA 94111
(415) 391-5400
wbraunig@keker.com
cgray@keker.com
jconcilla@keker.com
mfirmage@keker.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Defendants Vouch, Inc., Vouch
Specialty Insurance Services, LLC, Vouch US
Insurance Services Holdings, LLC, Vouch Risk
Management Services, LLC, Kelly Wulff, and
Augmenta Advisory, LLC*

6252551

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.   ARGUMENT................................................................................................................2

      A.    Defendants' Motion to Compel Arbitration is Not Moot. .....................................2

      B.    Corgi's Six Original Claims Remain Governed by the Arbitration
            Agreement and Should be Compelled to Arbitration. ............................................3

            1.    Corgi Cannot Plead Around the Arbitration Agreement by
                  Dropping the Breach of Contract Claim. .......................................................3

            2.    The FAC Continues to Allege that Corgi's Original Claims
                  Depend on the Terms of Use that Contain the Arbitration
                  Agreement.......................................................................................................4

      C.    Corgi's New Claims Are Also Covered by the Arbitration Agreement and
            Should be Compelled to Arbitration. ........................................................................6

      D.    Nothing in the FAC Changes the Applicability of the Arbitration
            Agreement to the Claims Against All Defendants....................................................7

      E.    Defendants Should Be Granted Their Fees and Costs. ...........................................9

III.  CONCLUSION............................................................................................................10

6252551

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Neighborhood Mortg. Acceptance Co. v. CrossCountry Mortg., Inc.*,
2021 WL 4705231 (3d Cir. Oct. 8, 2021)................................................................2

*CardioNet, Inc. v. Cigna Health Corp.*,
751 F.3d 165 (3d Cir. 2014)......................................................................3, 4

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*,
716 F.3d 764 (3d Cir. 2013)..............................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)...............................................................................................7

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024) .............................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)................................................................................................7

*Powerhouse Commc'ns, LLC v. Midstate Commc'n Contractors, Inc.*,
2025 WL 2670517 (M.D. Pa. Sept. 17, 2025) ...........................................3

*Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*,
263 F. Supp. 3d 491 (D. Del. 2017)..............................................................9, 11

*Smith v. Spizzirri*,
601 U.S. 472 (2024)...........................................................................................7

*Turing Video Tech., Inc. v. AGI7 Inc.*,
2025 WL 579190 (N.D. Cal. Feb. 21, 2025) ...........................................3, 7

*West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*,
712 F.3d 165 (3d Cir. 2013)................................................................................3

*Yadegari v. Ford Motor Co.*,
2023 WL 11067049 (C.D. Cal. Dec. 20, 2023) ...........................................8

**State Cases**

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76 (Del. 2006) ....................................................................................7

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
2006 WL 2473665 (Del. Ch. Aug. 22, 2006) ...........................................9

6252551

**Rules**

Federal Rule of Civil Procedure 15 ...............................................................................................3

6252551

As authorized by the Court's June 29, 2026 order (D.I. 26), Defendants submit this Supplemental Brief in Support of their Motion to Compel Arbitration (D.I. 18–20).

## I.    INTRODUCTION[1]

This case belongs in arbitration. As Defendants demonstrated in their Opening Brief, each one of Corgi's claims arises from Defendants' alleged access to Corgi's website, which is governed by Terms of Use that contain a broad and mandatory Arbitration Agreement. That Agreement covers "*any* dispute between you and *any* of the Company Parties relating *in any way* to the Site, the services offered on the Site ('the Services') or these Terms." D.I. 19 (the "Opening Brief"), Ex. A at 5 (§ 10.2(a)). The alleged Agreement is enforceable; covers all claims against all Defendants; and, even if there were a dispute about any of that, delegates threshold arbitrability questions exclusively to the arbitrator, not to this Court.

In a misguided effort to avoid the sweeping Arbitration Agreement contained in its own Terms of Use, Corgi elected not to oppose Defendants' Motion but instead to file a First Amended Complaint, D.I. 24 ("FAC"), that dropped its breach-of-contract claim alleging an express breach of the Terms themselves and added four new claims (Counts VII-X). But Corgi's amendment is a tactical maneuver—not a substantive change—and does not alter the analysis. The FAC retains six of the seven original claims (now Counts I-VI); continues to assert claims against each Defendant that moved to compel arbitration; and leaves the core factual allegations—Defendants' alleged access to and use of Corgi's website—untouched.

As explained below, Corgi's filing of the FAC does not moot the Motion and cannot evade the Arbitration Agreement. The substance of the parties' dispute has not changed, and

---

[1] Unless otherwise noted, internal quotation marks, alterations, and citations have been omitted, and all emphases have been added.

1

6252551

it is the substance (*i.e.*, whether a dispute relates to the Site, Services, or Terms) that controls arbitrability. Corgi's new claims should also be compelled to arbitration because they too relate to Corgi's Site and Services. At very least, they present an arbitrability question that the delegation clause assigns exclusively to the arbitrator. Finally, nothing in the FAC alters the ability of each one of the Defendants to compel arbitration of the claims against them.

For these reasons, and those set forth in Defendants' Opening Brief, the Court should compel arbitration of Corgi's claims, order Corgi to pay Defendants' fees and costs associated with this Motion, and otherwise stay this case.

## II.    ARGUMENT

### A.    Defendants' Motion to Compel Arbitration is Not Moot.

Corgi's amendment does not moot Defendants' Motion. The Third Circuit has squarely held that an amended complaint does ***not*** automatically moot a pending motion to compel arbitration. In *GEICO v. Mount Prospect Chiropractic Center*, for instance, the court held that, depending on the facts, district courts may "deny as moot motions directed to subsequently amended complaints or apply their arguments to the new complaint and dispose of them on the merits." 98 F.4th 463, 472 (3d Cir. 2024). "If the arguments in a motion apply to the amended complaint, and the motion's proponent does not object to applying it to the new pleading, [there is] no reason why a trial court cannot do so." *Id.* at 472–73. In fact, it is an abuse of discretion to deny as moot a motion to compel arbitration where "[n]othing in the amended complaint preclude[d] arbitration." *Id.* at 473.[2]

Here, Corgi did not drop any Defendant who moved to compel arbitration. Nor did it

---

[2] By contrast, a motion to compel arbitration is mooted where the amendment drops all claims against the moving defendants. *See Am. Neighborhood Mortg. Acceptance Co. v. CrossCountry Mortg., Inc.*, 2021 WL 4705231, at *2 (3d Cir. Oct. 8, 2021).

materially alter any existing allegations. On the contrary, it retained six of the seven original claims, added new claims against existing Defendants, and re-alleged the exact same website access-based scheme against the same Defendants. Nothing in the FAC, therefore, "precludes arbitration." *GEICO*, 98 F.4th at 473. Defendants' arguments apply with full force to the FAC. And because Defendants do not object to applying the Motion to the FAC, the Court should treat the Motion (along with this brief) as directed to the FAC and resolve it on the merits.[3]

> **B.      Corgi's Six Original Claims Remain Governed by the Arbitration Agreement and Should be Compelled to Arbitration.**

> **1.      Corgi Cannot Plead Around the Arbitration Agreement by Dropping the Breach of Contract Claim.**

In the Third Circuit, arbitrability turns on the substance of the dispute, not the legal theories plaintiffs choose to assert. Courts specifically "focus on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014). This rule exists to "prevent a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." *Id.* A party "cannot simply fashion or characterize the legal theories of its claims to avoid arbitration." *Powerhouse Commc'ns, LLC v. Midstate Commc'n Contractors, Inc.*, 2025 WL 2670517, at *6 (M.D. Pa. Sept. 17, 2025). Nor can a party "avoid arbitration by foreswearing reliance on the agreement after it decides to sue." *Turing Video Tech., Inc. v. AGI7 Inc.*, 2025 WL 579190, at *4 (N.D. Cal. Feb. 21, 2025).

---

[3] The "supersession" doctrine of Federal Rule of Civil Procedure 15 does not apply here. While an amended complaint moots a motion to dismiss because the amendment may cure the pleading deficiencies the motion attacked, *see West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013), a motion to compel arbitration does not attack pleading deficiencies; it vindicates a contractual right that no amendment can eliminate. The Third Circuit recognized this distinction in *GEICO*, expressly refusing to apply the *West Run* supersession rule in the arbitration context. 98 F.4th at 472.

6252551

Corgi's tactics here are precisely the kind of artful pleading these cases prohibit. After Defendants filed their motion to compel arbitration, Corgi dropped its breach-of-contract claim—a count that had alleged an express breach of the contract containing the Arbitration Agreement—in a transparent attempt to avoid arbitration. But while Corgi withdrew that one legal theory, the factual basis for its six holdover claims (now Counts I–VI) is identical and runs squarely into the Arbitration Agreement. The FAC avers that Defendants accessed the same website, submitted the same application, obtained the same materials, and canceled the same policy as set out in the original Complaint. *Compare* D.I. 1 ("Compl.") ¶¶ 27–39 *with* FAC ¶¶ 28–40. Those allegations continue to form the "factual underpinnings" of each one of the six claims Plaintiffs carried over to the amended complaint. *CardioNet, Inc.*, 751 F.3d at 173. And each one of those claims constitutes a dispute "relating in any way to the Site, the services offered on the Site . . . or these Terms," as Defendants explained in their Opening Brief. *See* D.I. 19 § V.A.2. Removing a breach-of-contract claim about the Terms does not obviate the Terms' existence and does not put Corgi's claims beyond the reach of the Arbitration Agreement. Corgi's six retained claims should be compelled to arbitration.

### 2. The FAC Continues to Allege that Corgi's Original Claims Depend on the Terms of Use that Contain the Arbitration Agreement.

Corgi's decision to drop its breach-of-contract claim does not preclude arbitration of the other original claims (now Counts I–VI) for a second reason: the FAC still alleges that Defendant Augmenta "agreed to the Terms and Conditions of Corgi's platform." FAC ¶ 29(j). And the Terms themselves require no affirmative click-through for acceptance—one must merely "access[] or us[e] the Site." D.I. 19, Ex. A at 1. The FAC, like its predecessor, alleges that Ms. Wulff, on behalf of Augmenta (and as allegedly "directed" by the Vouch Entity Defendants), accessed the Site, went through the "full underwriting flow," and submitted an

6252551

application on Augmenta's behalf. FAC ¶¶ 2, 28, 39. These allegations confirm that Augmenta agreed to the Terms—including the Arbitration Agreement—as part of its use of the Site. Corgi's dispute with Augmenta and the Vouch Defendants, in short, still expressly "relates" to the Site, Services, and/or Terms. D.I. 19, Ex. A.

Beyond referencing and alleging acceptance of the Terms, Corgi also affirmatively relies on the Terms to support its claims in the FAC. Its trade-secret claims continue to depend on the Terms as the primary "reasonable measures" protecting its alleged trade secrets. FAC ¶ 27(a)–(b) (alleging protection through "acceptance of binding Terms of Use" and "express prohibitions against using the platform for competitive purposes (Section 2.2(c))"). The declaratory relief claim likewise expressly invokes the Terms. FAC ¶ 70. And each of the remaining original claims—civil conspiracy (Count III), unjust enrichment (Count IV), and fraud (Count V)— likewise arises from Defendants' alleged access to and use of the Terms-governed Site. *See* D.I. 19 at § V.A.2. Corgi drafted the Terms, alleges they are binding, relies on them to assert its claims, and alleges Defendants accepted them. As before, Corgi does not get to have it both ways: it may not invoke the Terms to assert claims against Defendants while ignoring the Arbitration Agreement those Terms contain.

In sum, because the retained claims are substantively unchanged, the Opening Brief's arguments apply in full: the Arbitration Agreement is valid (D.I. 19 at § V.A.1); it covers all six retained claims (*id.* at § V.A.2); the delegation clause independently requires compelling arbitration, because questions of arbitrability are delegated to the arbitrator (*id.* at § V.A.3); and the Arbitration Agreement applies to all Defendants through alter ego and equitable estoppel (*id.* at § V.A.4). Defendants incorporate those arguments by reference.

5

### C.    Corgi's New Claims Are Also Covered by the Arbitration Agreement and Should be Compelled to Arbitration.

Corgi's new claims should also be compelled to arbitration. Counts VII–X—for false advertising under the Lanham Act (Count VII), deceptive trade practices under Delaware law (Count VIII), commercial disparagement (Count IX), and tortious interference with prospective economic advantage (Count X)—are each inextricably linked to the same website-based dispute that the Arbitration Agreement governs. All four counts arise from a single sales communication in which a Vouch sales representative allegedly compared Corgi's insurance to Vouch's insurance and stated that the difference was "the difference between insurance that checks a box and insurance that actually pays." FAC ¶ 42. But the FAC alleges that the false advertising is a product of the *same* misappropriation scheme that underpins Counts I–VI. Specifically, it alleges that "Vouch used the confidential and proprietary information it misappropriated [through Augmenta's access to Corgi's website] to support deceptive trade practices, among other inappropriate conduct." FAC ¶ 4. In Corgi's own telling, the advertising claims are a chapter of the same story—not an independent dispute. They allege that Defendants used information obtained through the Site to gain an unfair advantage in the marketplace. That conduct "relat[es] in any way" to the Site and the Services offered on the Site, D.I. 19 Ex. A at 5 (§ 10.2(a))— requiring that the associated claims be compelled to arbitration.

The structure of the new counts confirms the point. Each of Counts VII–X "incorporate[s] by reference all preceding paragraphs" (FAC ¶¶ 73, 82, 88, 95)—meaning that every new count rests on the same factual foundation as Counts I–VI: Ms. Wulff's access to the Site, her acceptance of the Terms, the submission of a supposedly pretextual insurance application, the alleged receipt of proprietary materials through the website platform, and the cancellation of the resulting policy. The new counts do not stand alone. They are, according to

6

Corgi, the next chapter in the same platform-based dispute, repackaged under different legal labels. Styling them as "advertising" claims rather than "trade secret" or "breach of contract" claims does not alter the calculus. *See Turing Video Tech., Inc*, 2025 WL 579190, at *4 (compelling arbitration of claims plaintiff styled to avoid the arbitration agreement).

Even if there were doubt about whether the new claims fall within the scope of the Arbitration Agreement, that question should be resolved in the first instance by the arbitrator, following an order from this Court compelling arbitration. As detailed in the Opening Brief (D.I. 19 § V.A.3), the Terms contain a clear and unmistakable delegation clause granting the arbitrator "exclusive authority" over "any dispute related to the interpretation, applicability, enforceability or formation" of the Agreement. D.I. 19 Ex. A at 7 (§ 10.2(d)). The incorporation of the JAMS rules independently confirms delegation. *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006). Under *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019), once a valid delegation clause exists, the Court "possesses no power to decide the arbitrability issue." If the Court has any question about whether the new claims are covered, it should send that question to the arbitrator.

Finally, even if the delegation clause did not apply (it does) and the Court were to deem that one or more of the new claims falls outside the Agreement's scope, the proper procedural step for this Court to take would still be to compel arbitration of the arbitrable claims and stay the remainder of this case. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26–27 (1983); *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

### D.    Nothing in the FAC Changes the Applicability of the Arbitration Agreement to the Claims Against All Defendants.

Each one of the Defendants may compel arbitration of the claims against them. As explained in the Opening Brief (D.I. 19 § V.A.4), Augmenta is a party to the Arbitration

7

6252551

Agreement because Ms. Wulff, acting on Augmenta's behalf, accepted the Terms when she accessed the Site and submitted an insurance application. FAC ¶¶ 2, 28, 29(j). The Vouch Defendants, although nonsignatories, may invoke the Arbitration Agreement under two independent doctrines: alter ego and equitable estoppel. The FAC does not disturb the analysis under either theory.

The alter ego theory is straightforward. A nonsignatory alleged to be the alter ego of a signatory may invoke the signatory's arbitration agreement. *See Yadegari v. Ford Motor Co.*, 2023 WL 11067049, at *3 (C.D. Cal. Dec. 20, 2023) ("Nonsignatory alleged alter egos are entitled to compel arbitration."); *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (where arbitrability is apparent on the face of a complaint, courts apply a 12(b)(6) standard to an arbitration motion, "accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff"). Here, the FAC continues to expressly allege that "Augmenta Advisory is the alter ego of the Vouch Defendants." FAC ¶ 15. It alleges that Augmenta "has never conducted any legitimate business, has no clients, no public presence, no employees other than Wulff, and was created solely as an instrumentality of the scheme alleged herein." *Id.* These allegations are identical to those in the original Complaint. *Compare* Compl. ¶ 15 *with* FAC ¶ 15. Because Corgi itself alleges that the Vouch Defendants and Augmenta are alter egos, the Vouch Defendants may invoke Augmenta's Arbitration Agreement. D.I. 19 at § V.A.4.c.

Equitable estoppel independently supports the same result. As detailed in the Opening Brief (D.I. 19 § V.A.4.d), under California and Delaware law, a nonsignatory may compel a signatory to arbitrate when the signatory's claims are "intimately founded in and intertwined with" the contract containing the arbitration clause, or when the signatory alleges "substantially

8

interdependent and concerted misconduct" between a nonsignatory and a signatory. *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at \*5 (Del. Ch. Aug. 22, 2006); *see also Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707, 707 n.5 (9th Cir. 2024). Both conditions are satisfied here—and the FAC does nothing to change that. Corgi's claims remain intimately intertwined with the Terms, as detailed above. Moreover, the FAC continues to allege that the Vouch Entity Defendants "orchestrated" the scheme (FAC ¶ 1), "directed Wulff to create Augmenta" (FAC ¶ 39), and that Wulff acted "within the scope of her employment and for the benefit of the Vouch Entity Defendants" (FAC ¶¶ 13, 14). These are allegations of concerted misconduct between signatories and nonsignatories that trigger equitable estoppel. *See Sanum Inv. Ltd. v. San Marco Cap. Partners LLC*, 263 F. Supp. 3d 491, 496 (D. Del. 2017) (compelling arbitration where a "close relationship" existed between signatories and nonsignatories in "cases involving subsidiaries, affiliates, agents, and other related business entities").

The new claims (Counts VII–X) do not alter this analysis. Although the four new advertising-related counts are asserted against only the Vouch Entity Defendants, they arise from the same alleged scheme and incorporate by reference the same allegations of coordinated misconduct through the Site. FAC ¶¶ 73, 82, 88, 95. The Opening Brief's arguments apply with equal force to every claim in the FAC.

### E.    Defendants Should Be Granted Their Fees and Costs.

Finally, Corgi's FAC does nothing to avoid the fee-shifting provisions in the Terms of Use. Defendants demonstrated in the Opening Brief (D.I. 19 § V.C) that the Terms require Corgi to bear the costs of this Motion under two independent provisions of Section 10.2(g). Rather than take heed, Corgi doubled down—filing the FAC and forcing Defendants to further expend resources briefing a motion that never should have been necessary in the first place.

6252551

To reiterate: under Corgi's own Terms, a party that "obtains an order compelling arbitration" is entitled to collect its "reasonable costs, necessary disbursements, and reasonable attorneys' fees incurred in securing" that order. D.I. 19, Ex. A at 8 (§ 10.2(g)). Separately, the "prevailing party in any court action relating to whether either party has satisfied any condition precedent to arbitration"—including the mandatory Informal Dispute Resolution ("IDR") process Corgi ignored—is entitled to recover its fees and costs. *Id.* Here, Corgi never contacted any Defendant before filing suit, never gave notice of its "intent to initiate an Informal Dispute Resolution Conference," and never participated in any such conference. Wulff Decl., D.I. 20, ¶¶ 2–4. No amended complaint can retroactively cure that failure. Likewise, Corgi's decision to amend rather than oppose the Motion did not eliminate Defendants' need to file the motion—it just forced Defendants to brief the issue twice. Under both provisions, Defendants should be awarded their fees and costs.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court (1) treat the Motion to Compel Arbitration (along with this brief) as directed to the FAC; (2) compel arbitration of all claims against all Defendants; (3) stay this action pending the conclusion of the arbitration; (4) issue an order finding that Corgi did not comply with section 10.2(b) of the Terms of Use; (5) award Defendants reasonable attorneys' fees, costs, and necessary disbursements incurred in connection with this Motion; and (6) permit Defendants to submit a fee application within twenty-one days of an order compelling arbitration or otherwise finding non-compliance with the IDR process.

6252551

Respectfully submitted,

Dated: July 10, 2026

*Of Counsel:*

KEKER, VAN NEST & PETERS LLP
Warren A. Braunig
Cody Gray
Jacqueline Concilla
Michaela M. Firmage
633 Battery Street
San Francisco, California 94111
(415) 391-5400
wbraunig@keker.com
cgray@keker.com
jconcilla@keker.com
mfirmage@keker.com

YOUNG, CONAWAY, STARGATT &
TAYLOR LLP

*/s/ Robert M. Vrana*
Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Defendants Vouch, Inc. Vouch
Specialty Insurance Services LLC, Vouch US
Insurance Services Holdings LLC, Vouch Risk
Management Services LLC, Kelly Wulff and
Augmenta Advisory LLC*

11

6252551

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 10, 2026, a copy of the foregoing document

was served on the counsel listed below in the manner indicated:

**BY EMAIL**
Travis J. Ferguson
Amy R. Harriman
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King St., 8th Floor
Wilmington, DE 19801
tferguson@mccarter.com
aharriman@mccarter.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Robert M. Vrana*
Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Defendants Vouch, Inc., Vouch
Specialty Insurance Services, LLC, Vouch US
Insurance Services Holdings, LLC, Vouch Risk
Management Services, LLC, Kelly Wulff, and
Augmenta Advisory, LLC*