## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TECHNOLOGY RISK RETENTION GROUP, INC., an Arizona corporation, CORGI INSURANCE SERVICES, INC., a Delaware corporation, | C.A. No. 26-426-RGA |
| *Plaintiffs,* | JURY TRIAL DEMANDED |
| v. | |
| VOUCH, INC., a Delaware corporation, VOUCH SPECIALTY INSURANCE SERVICES, LLC, a Delaware limited liability company, VOUCH US INSURANCE SERVICES HOLDINGS, LLC, a Delaware limited liability company, VOUCH RISK MANAGEMENT SERVICES, LLC, a Delaware limited liability company, KELLY WULFF, an individual, AUGMENTA ADVISORY, LLC, a Delaware limited liability company, | |
| *Defendants.* | |

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

Dated: July 31, 2026

McCARTER & ENGLISH, LLP

Travis J. Ferguson (No. 6029)
Amy R. Harriman (No. 7602)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300

*Counsel for Plaintiffs*

ME1\62182307.v1

**TABLE OF CONTENTS**

I.   NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

II.  SUMMARY OF ARGUMENT .......................................................................................... 1

    A.   Corgi's Terms of Use Carves Out Intellectual Property Enforcement Actions from the Arbitration Provision. ..................................................................................................... 3

    B.   Plaintiffs File This Action Seeking Equitable Relief For Defendants' Misuse of Intellectual Property. .................................................................................................... 4

IV.  ARGUMENT ...................................................................................................................... 5

    A.   The Arbitration Provision Does Not Cover Defendants' Alleged Misconduct .............. 5

    B.   Even if the Arbitration Provision Applies, This Action Falls Within an Exception. ...... 8

    C.   This Court Decides Questions of Arbitrability ............................................................... 11

    D.   The Vouch Entity Defendants Cannot Enforce the Arbitration Provision, and No Equitable Doctrine Can Enlarge Arbitration Rights Beyond the Agreement. ............. 14

    E.   Defendants' request for fees and costs should be denied. ........................................... 16

V.   CONCLUSION .................................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019), cert. dismissed, 141 S. Ct. 656 (2021) ...........................9, 10, 12

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009).................................................................................................................15

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986)...............................................................................................................5, 11

*CardioNet, Inc. v. Cigna Health Corp.*,
751 F.3d 165 (3d Cir. 2014).....................................................................................................10

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
809 F.3d 746 (3d Cir. 2016).....................................................................................................11

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024).................................................................................................................11

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,
S.A.S.*,
269 F.3d 187 (3d Cir. 2001).....................................................................................................15

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995).................................................................................................................11

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)...................................................................................................................5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019), D.I. 30......................................................................................................12

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76 (Del. 2006) ......................................................................................................12, 13

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*,
247 F.3d 44 (3d Cir. 2001).......................................................................................................6, 7

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022).................................................................................................................10

*NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*,
770 F.3d 1010 (2d Cir. 2014)....................................................................................................12

*West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*,
    712 F.3d 165 (3d Cir. 2013)................................................................................11, 14

*White v. Sunoco, Inc.*,
    870 F.3d 257 (3d Cir. 2017)........................................................................................15

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
    2006 WL 2473665 (Del. Ch. Aug. 22, 2006) ...........................................................15

**Statutes**

6 Del. C. § 2002 ...........................................................................................................5, 9

9 U.S.C. § 2....................................................................................................................5

18 U.S.C. § 1836(b)(3)(A)........................................................................................5, 9, 10

Delaware Uniform Trade Secrets Act............................................................................5

Federal Arbitration Act .................................................................................................5

**Other Authorities**

Federal Rule of Civil Procedure 8(d)(2)-(3) ................................................................15

## I.      NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Technology Risk Retention Group, Inc. ("TRRG") and Corgi Insurance Services, Inc. ("Corgi," and together with TRRG, "Plaintiffs") commenced this action on April 14, 2026, and filed their First Amended Complaint (D.I. 24) ("FAC") as of right after Defendants moved to compel arbitration and to dismiss. *See* D.I. 18–23.  Pursuant to the Court's June 29, 2026 Order (D.I. 26), Defendants filed a supplemental brief in support of their Motion to Compel Arbitration on July 10, 2026 (D.I. 30, "Supplemental Brief"), together with a motion to dismiss the FAC (D.I. 27–29). This is Plaintiffs' opposition to the Motion to Compel Arbitration and Supplemental Brief (D.I. 18–20, 30).  Plaintiffs' opposition to the motion to dismiss is filed contemporaneously.

## II.      SUMMARY OF ARGUMENT

The substance of Plaintiffs' claims in this action fall outside the scope of the Arbitration Provision set forth in Section 10.2(a) of the Terms.   This action arises from Defendants' misappropriation of Plaintiffs' trade secrets and their independent deceptive trade practices.

Even if Plaintiffs' claims fell within the Arbitration Provision's scope—and they do not—Defendants' motion fails for a simpler reason, one their two briefs never confront: the very provision Defendants invoke expressly carves this action out of arbitration.  Defendants quote Section 10.2(a)'s introductory language—"any dispute . . . relating in any way to the Site"—no fewer than five times across their briefs.  Not once do they quote how the sentence ends.  The full provision mandates arbitration "except that . . . (2) you or the Company Parties may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents)." D.I. 19, Ex. A at 5 (§ 10.2(a)). That exception describes this case.   Plaintiffs seek equitable relief in court—injunctions, rescission, restitution, and a declaratory judgment—for Defendants' misuse of Plaintiffs' intellectual property, including the very trade secrets the carve-out names.  And even if some

1

discrete issue were properly arbitrable, the remedy would not be wholesale dismissal: the Court would retain the equitable trade secret and trade practice claims and refer, at most, any severable issues to arbitration.

1.      Counts VII through X fall outside the Arbitration Provision for an independent reason: they arise entirely from Defendants' false and disparaging statements to Plaintiffs' prospective customers.  Those statements were not made on, through, or by use of the Site.

2.      Section 10.2(a)(2) of the Terms expressly authorizes this action. Counts I and II assert trade secret claims and seek injunctive relief—the paradigm case for the carve-out, which names "trade secrets" among the intellectual property rights a party "may seek equitable relief in court" to protect.  Counts III through VI arise from the same scheme of misappropriation and likewise sound in equity, seeking rescission, restitution, and a declaration of voidness.  The Terms permit precisely what Plaintiffs have done: sue in court, in equity, to stop the misuse of their intellectual property.  Nothing remains for arbitration.

3.      This Court, not an arbitrator, decides arbitrability.  The delegation clause extends the arbitrator's authority only to "disputes subject to arbitration hereunder"—and Counts I through IV, as carved-out disputes, are by definition not subject to arbitration hereunder.  Ex. A at 7 (§ 10.2(d)).   A delegation limited by the same carve-out that excludes those counts cannot supply the clear and unmistakable evidence of intent to arbitrate arbitrability that Defendants must show. That burden is theirs, and they cannot carry it.

4.      Five of the six Defendants are strangers to the Terms, and no doctrine—equitable estoppel, alter ego, or otherwise—permits a non-signatory to acquire arbitration rights greater than those the agreement itself confers.  Because this action is carved out of the Arbitration Provision, the non-signatory Defendants have no basis to compel arbitration.

5.      Defendants' demand for their fees inverts the Terms.  The fee-shifting provision Defendants invoke has no application here: fees are available, if at all, only in connection with an arbitration properly commenced, and the Motion to Compel should be denied.  Nor does the informal dispute-resolution provision aid Defendants—it is a condition precedent to commencing an arbitration, not a prerequisite to a carved-out court action.  Ex. A at 6, 8 (§§ 10.2(b), (g)).

**III.      STATEMENT OF FACTS**

      **A. Corgi's Terms of Use Carves Out Intellectual Property Enforcement Actions from the Arbitration Provision.**

Corgi operates a technology-enabled commercial insurance platform. D.I. 24 at ¶ 6. Use of its website, at www.corgi.insure, is governed

by Corgi's Website Terms of Use, Version 1.0, effective January 7, 2026 (the "Terms"), which Defendants attached to their opening brief. D.I. 19, Ex. A.

Section 10.2 of the Terms contains a dispute-resolution provision (the "Arbitration Provision"). Its first operative sentence provides in full:

> You agree that any dispute between you and any of the Company Parties relating in any way to the Site, the services offered on the Site (the "Services") or these Terms will be resolved by binding arbitration, rather than in court, **except that** (1) you and the Company Parties may assert individualized claims in small claims court if the claims qualify . . . ; and **(2) you or the Company Parties may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents)**.

Ex. A at 5 (§ 10.2(a)) (emphasis added). The Terms' jury-trial waiver is likewise subordinated to that carve-out: "EXCEPT AS SPECIFIED IN SECTION 10.2(A) YOU AND THE COMPANY PARTIES HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY." Ex. A at 7 (§

3

10.2(e)). In other words, the drafters contemplated—twice—that actions seeking equitable relief for the misuse of intellectual property would proceed in court, before a judge or jury.

The Arbitration Provision's delegation provision grants an arbitrator "exclusive authority to resolve all disputes *subject to arbitration hereunder*," and reserves four categories of disputes for "a court of competent jurisdiction and not . . . an arbitrator," including "all Disputes about whether either party has satisfied any condition precedent to arbitration" and "all Disputes about which version of the Arbitration Provision applies." Ex. A at 7 (§ 10.2(d)) (emphasis added).

Section 10.2(b) includes an informal dispute resolution process that applies "before either party commences arbitration against the other," and Section 10.2(g) permits fee recovery only by a "party that obtains an order compelling arbitration" or a party that prevails "in any court action relating to whether either party has satisfied any condition precedent to arbitration." Ex. A at 6, 8 (§§ 10.2(b), (g)).

### B. Plaintiffs File This Action Seeking Equitable Relief For Defendants' Misuse of Intellectual Property.

The FAC alleges that Defendant Kelly Wulff—the Chief Legal & Administrative Officer of Vouch, a direct competitor to Plaintiffs—formed a shell entity (Augmenta) and used it, on the very day of its formation, to submit a pretextual insurance application through Corgi's platform; extracted Plaintiffs' proprietary underwriting methodology, custom policy forms, and pricing architecture; and cancelled the resulting policy within days, having obtained what she came for. D.I. 24 at ¶¶ 1–3, 28–35. The FAC further alleges that Vouch thereafter deployed false and disparaging statements about Corgi's insurance products to prospective customers. *Id.* ¶¶ 4, 39–49.

On these facts, Plaintiffs assert trade secret misappropriation under the federal Defend Trade Secrets Act and the Delaware Uniform Trade Secrets Act (Counts I–II), together with related

4

claims (Counts III–VI), and claims arising from Defendants' false and disparaging commercial statements (Counts VII–X).  Plaintiffs seek equitable relief on almost every count: injunctions restraining the use of the misappropriated trade secrets pursuant to 18 U.S.C. § 1836(b)(3)(A) and 6 Del. C. § 2002, *see* D.I. 24 at ¶ 5 (bringing this action "to enjoin Defendants from using Plaintiffs' trade secret, proprietary, and commercially sensitive business information"); restitution and disgorgement (Count IV); rescission of the fraudulently procured policy (Count V); a declaration that the policy is void ab initio (Count VI); and injunctive and corrective relief against Defendants' false comparative statements (Counts VII–X; D.I. 24 ¶ 49). The Prayer for Relief confirms this action's equitable center of gravity: it seeks a permanent injunction against use or disclosure of the Trade Secret Information, destruction of all copies, a prohibition on products derived from the information, identification of all recipients, a full accounting, and corrective advertising.

## IV.    ARGUMENT

Both sides agree the operative question can be answered from the FAC and the Terms that Defendants themselves placed in the record. *See* D.I. 19 at § V; D.I. 30 at 8.  Two bedrock principles frame the analysis. First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). The Federal Arbitration Act requires courts to enforce arbitration agreements "according to their terms"—including their limits. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 n.8 (2010); 9 U.S.C. § 2.  Second, the FAA's policy favoring arbitration "cannot be divorced from the first principle that underscores all of [the Supreme Court's] arbitration decisions"—consent.  *Granite Rock*, 561 U.S. at 299.

### A.  The Arbitration Provision Does Not Cover Defendants' Alleged Misconduct

The Arbitration Provision in Section 10.2 of the Terms applies only to disputes "relating in any way to the Site, the services offered on the Site … or the[] Terms."  The threshold

5

determination is thus whether the conduct alleged by Plaintiffs falls within the scope of the Arbitration Provision in the first place.  The decision around arbitrability is for the Court to decide, and not an arbitrator, as addressed *infra*.  "To determine whether a claim falls within the scope of an arbitration agreement, the 'focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint.'"  *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001).  Here, the factual underpinnings of Plaintiffs' claims do not fall within the scope of the Arbitration Provision because they do not relate in any way to the Site or the services offered by Corgi on the Site.  Plaintiffs first allege that Defendants perpetuated a scheme to misappropriate Plaintiffs' trade secrets.  Plaintiffs then allege that Defendants engaged in deceptive and unauthorized trade practices to malign Corgi's offerings to prospective customers.

Looking first to Counts VII through X—for false advertising under the Lanham Act (Count VII), deceptive trade practices (Count VIII), commercial disparagement (Count IX), and tortious interference (Count X)—they are clearly not disputes "relating in any way to the Site, the . . . Services[,] or these Terms." Ex. A at 5 (§ 10.2(a)).  The factual underpinnings of Counts VII through X are Defendants' own written sales communication to a prospective customer disparaging Corgi's insurance as coverage that merely "checks a box" and does not "actually pay[]." D.I. 24 at ¶¶ 40–49. Not one element of those claims requires proof that any Defendant accessed, used, or agreed to anything on Corgi's website.  Rather, the statement was made by a Vouch salesperson to a third party in the marketplace in order to "win" that third party's business.

Defendants' argument that Counts VII through X fall within the Arbitration Provision rests entirely on FAC paragraph 4, which alleges that "Corgi suspects that Vouch used the confidential and proprietary information it misappropriated . . . to support deceptive trade practices."  D.I. 30 at 6.  That is a thin reed. A plaintiff's suspicion about how a defendant weaponized misappropriated

information is not a "factual underpinning" of claims whose elements—falsity, materiality, commercial dissemination, disparagement, interference—rise and fall without reference to the Site. Defendants' fallback—that Counts VII through X "incorporate by reference all preceding paragraphs," *id*. at 6–7—proves far too much. On that logic, a routine incorporation clause would sweep every count of every complaint into arbitration. Contract language is read sensibly, not boundlessly, and no sensible reading holds that every claim Corgi brings against Vouch "relates to" a February 2026 website visit by its Chief Legal & Administrative Officer. Notably, the factual-underpinnings inquiry does not impose a blanket rule that compels arbitration whenever a claim might have a tangential factual link. Rather, the scope of the specific arbitration clause at issue must be carefully assessed. The relevant inquiry is whether each specific claim, as pleaded, "relat[es] in any way to the Site, the services offered on the Site, or these Terms." *See Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc*., 247 F.3d 44, 55 (3d Cir. 2001). Counts I through V do not. They are grounded in Defendants' scheme to obtain and misuse Plaintiffs' trade secret and proprietary information—not on any obligation imposed by the Terms, or an issue related in any way to the Site. The fact that Defendants' scheme to obtain and misuse Plaintiffs' trade secret and proprietary information may also violate or implicate the Terms does not necessarily mean they fall within the Arbitration Provision. Stated another way, even if the Terms did not exist, Plaintiffs would still be able to pursue Counts I through V based on Defendants' conduct. Removal of the breach of Terms claim reflects that genuine legal reality. Counts I through V are independent wrongs and do not depend on the Terms whatsoever.

7

### B.  Even if the Arbitration Provision Applies, This Action Falls Within an Exception.

Even if the Court concludes that some or all of Plaintiffs' claims fall within the scope of the Arbitration Provision, the express carve-out for claims seeking equitable relief for misuse of intellectual property rights, including trade secrets, permits the filing of this action in this Court.

Defendants interpret Section 10.2(a) to commit "any dispute relating in any way to the Site" to arbitration—full stop.  They ignore, however, the clear exception to arbitration for "the Company Parties" [to] seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents)."  Ex. A at 5 (§ 10.2(a)(2)).  That is precisely what Plaintiffs seek in this action.[1]

Even if Defendants are correct that all of Plaintiffs' claims "derive from Defendants' allegedly improper access to Corgi's website," D.I. 19 at 1, the motion still fails, because on that telling the entire action falls within Section 10.2(a)(2)'s carve-out.  The carve-out has two elements, and Plaintiffs satisfy both.  First, every count concerns the misuse of Plaintiffs' intellectual property.  Counts I and II are trade secret misappropriation claims—the paradigm case.  Counts III through IV are, by Defendants' own admission, "grounded in the same facts" as the trade secret claims.  D.I. 28 at 13-17.  And if Counts VII through X "relate to" Corgi's website at all, as Defendants insist, D.I. 30 at 6-7, then they too are a further chapter of the same misuse of intellectual property that underpins Counts I through VI.  Second, Plaintiffs "seek equitable relief in court": injunctive relief on the trade secret counts under 18 U.S.C. § 1836(b)(3)(A) and 6 Del. C. § 2002; restitution and disgorgement; rescission; a declaratory judgment; and injunctive and

---

[1] Defendants insist that Plaintiff TRRG is a "Company Party" and that Corgi is the drafter and a party to its own Terms. D.I. 19 at 3 & n.5. Taking Defendants at their word, both Plaintiffs are entitled to invoke the carve-out.  And this action sits at the carve-out's center.  Alternatively, if TRRG is not a "Company Party" then the Arbitration Provision does not apply to its claims and the motion to compel arbitration must fail.

corrective relief against Defendants' disparaging statements. D.I. 24 at ¶¶ 5, 49, Counts I–X & Prayer for Relief. Equity is not incidental to this case—it is the point. As the FAC pleads, "[t]rade secrets, once misappropriated, cannot be unlearned" and Plaintiffs "require injunctive relief" precisely because damages cannot undo Defendants' continuing ability to exploit what they took. D.I. 24 at Count I. At every turn, Defendants' own characterizations place this action within the carve-out. Plaintiffs' request for damages does not bring this action outside the scope of the applicable carve-out to the Arbitration Provision. The Fifth Circuit's decision on remand from the Supreme Court in *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019), cert. dismissed, 141 S. Ct. 656 (2021), is instructive on this point. The arbitration clause there covered "[a]ny dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property . . .)." *Id.* at 277. The plaintiff's antitrust action sought both millions of dollars in damages and injunctive relief. The Fifth Circuit held the action fell within the carve-out and refused to compel arbitration, explaining the clause "creates a carve-out for 'actions seeking injunctive relief,'" not for "actions seeking only injunctive relief," and that no such limiting language could be found "within the four corners of the contract." *Id.* at 281–82. Here, the equitable relief carve-out to the Arbitration Provision is not limited to actions seeking "only" injunctive relief, and to inject such a concept into the Arbitration Provision violates Delaware's scheme for contractual interpretation.

Defendants' only answer to the carve-out is buried in a single paragraph of their opening brief and attempts to recast it as a narrow authorization to seek "preliminary equitable relief 'in aid of arbitration.'" D.I. 19 at 8–9 (citing *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020), and *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277 (9th Cir. 2009)). That limitation is invented. The Terms say that a party "may seek equitable relief in court" for misuse

9

of intellectual property—an unqualified phrase that encompasses the final injunctive, restitutionary, declaratory, and accounting relief the FAC requests. Importantly, a court cannot enter a permanent injunction against trade secret misappropriation, or order destruction of misappropriated materials and an accounting, without adjudicating the merits. See 18 U.S.C. § 1836(b)(3)(A). The Fifth Circuit rejected precisely this move in *Archer & White*: a carve-out for "actions seeking injunctive relief" means what it says, and no words limiting it to interim relief in aid of arbitration can be found "within the four corners of the contract." 935 F.3d at 281–82.

The rest of Section 10.2 further proves the point. The jury-and-court waiver in Section 10.2(e) is stated—twice—as applying "EXCEPT AS SPECIFIED IN SECTION 10.2(A)." Ex. A at 7. If Section 10.2(a)(2) permitted only a temporary restraint while every merits question proceeded in arbitration, that repeated exception to the waiver of a court adjudication would do no work. Parallel structure confirms the same reading: no one contends that the adjacent small-claims carve-out in Section 10.2(a)(1) merely authorizes provisional small-claims filings in aid of arbitration—it removes qualifying claims from arbitration. "Except that" means the same thing in clause (2) as in clause (1). Defendants' Ninth Circuit cases, by contrast, construed materially different provisions and reasoned from a drafting purpose—preserving *status quo* relief while arbitration proceeds—that finds no expression anywhere in these Terms. Out-of-circuit decisions about other contracts cannot supply limiting language Corgi's drafters did not write. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (courts must enforce arbitration contracts as written, without arbitration-specific rules of favoritism).

Defendants' effort to brand the FAC "artful pleading," D.I. 30 at 3–5, does not save the motion. Their cases involve plaintiffs recasting claims to escape a clause that covers them. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014). No recasting was

10

necessary here: the plain text of the Arbitration Provision excludes this action, however the claims are labeled.  Plaintiffs were in any event entitled to streamline their pleading and drop a claim for breach of the Terms, *see West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171–73 (3d Cir. 2013), and the original Complaint was every bit the equitable enforcement action the FAC is.  The carve-out covered this case from the day it was filed.

Finally, even if Defendants could identify any sliver of this case outside the carve-out, the remedy would not be wholesale dismissal. The FAA permits at most only severance of that discrete piece for arbitration, with the rest of the action—the heart of it—proceeding in this Court.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20–21 (1983) (presupposing an agreement requiring arbitration of the severed piece).  Defendants have identified none.

### C.  This Court Decides Questions of Arbitrability.

Anticipating that their scope arguments fail, Defendants insist that "at very least" an arbitrator must decide arbitrability. D.I. 30 at 2, 7. That is wrong several times over.

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Techs.*, 475 U.S. at 649; accord *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  The Third Circuit has described this burden as "onerous," requiring that any silence or ambiguity be resolved in favor of judicial resolution of arbitrability. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753–54, 761 (3d Cir. 2016). The Supreme Court reaffirmed the governing antecedent principle in *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148–49 (2024), stating that before any delegation can operate, "a court needs to decide what the parties have agreed to," including which of the parties' competing contractual commitments controls the dispute.

The delegation clause here grants the arbitrator "exclusive authority to resolve all disputes *subject to arbitration hereunder*." Ex. A at 7 (§ 10.2(d)) (emphasis added).  Disputes within

11

Section 10.2(a)'s carve-outs are, by definition, not "subject to arbitration hereunder." Delegation never attaches.   The Fifth Circuit in *Archer & White* similarly held there was no clear and unmistakable delegation as to a carved-out action where the plain language of the arbitration clause delegated arbitrability "for all disputes *except those under the carve-out*[.]" 935 F.3d at 281–82. Accordingly, a court, not an arbitrator, decided arbitrability. The Second Circuit agrees: where "a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute," the parties have not clearly and unmistakably delegated arbitrability, and the court decides.  *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1031–32 (2d Cir. 2014).

Defendants' reliance on *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019), D.I. 30 at 7, is misplaced.  *Henry Schein* holds only that a court may not override a delegation it finds "wholly groundless."  The Supreme Court declined to decide "whether the contract at issue in this case in fact delegated the arbitrability question," remanding that question, *id.* at 72.  On remand, the Fifth Circuit held the carve-out meant the question of arbitrability was not delegated. 935 F.3d at 281–82. *Henry Schein* does not relieve Defendants of their burden to show a clear and unmistakable delegation of deciding arbitrability for this carved-out action.

The applicable equitable relief carve-out in Section 10.2 of the Arbitration Provision prevents a clear and unmistakable delegation of arbitrability as to this dispute.  Defendants cite *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76 (Del. 2006) for the proposition that "[t]he incorporation of the JAMS rules independently confirms delegation." D.I. 30 at 7. But *Willie Gary* cuts against Defendants.  The Delaware Supreme Court in *Willie Gary* held that incorporation of arbitral rules empowering an arbitrator to decide arbitrability constitutes clear and unmistakable evidence of delegation only where "the arbitration clause generally provides for arbitration of all disputes." 906 A.2d at 80–81.  Because the arbitration clause in *Willie Gary* "allowed [the parties]

12

to pursue injunctive relief and specific performance in court[,]" the Delaware Supreme Court found the clause did "not generally refer all controversies to arbitration," thus leaving arbitrability for a court. *Id.*[2] The Delaware Supreme Court thus rejected Defendants' exact argument: an arbitration clause containing a carve-out preserving court access defeats any claim of clear and unmistakable delegation of arbitrability to an arbitrator.

Like the circumstances in *Willie Gary*, Section 10.2(a) does not refer all disputes to arbitration: it excepts small-claims actions and court actions seeking equitable relief for the misuse of intellectual property. Accordingly, under *Willie Gary*, incorporation of the JAMS arbitral rules does not demonstrate clear and unmistakable evidence that the parties agreed to arbitrate the arbitrability of a carved-out enforcement action. *Willie Gary*, 906 A.2d at 80–81. The question of whether this action is subject to arbitration rests then with this Court and not with an arbitrator.

Lest there be any doubt, the delegation clause itself reserves four categories of disputes "to be decided only by a court of competent jurisdiction and not by an arbitrator," including "all Disputes about whether either party has satisfied any condition precedent to arbitration" and "all Disputes about which version of the Arbitration Provision applies." Ex. A at 7 (§ 10.2(d)). It also has a practical consequence Defendants ignore: their own fee demand turns on whether the Section 10.2(b) informal-dispute-resolution "condition precedent" was satisfied or excused, D.I. 30 at 9–10—a dispute the Agreement expressly commits to this Court. Defendants cannot ask the Court to adjudicate the condition-precedent question in their favor (for fees) while insisting that everything else about arbitrability belongs to an arbitrator.

---

[2] The carve-out in *Willie Gary* was narrower than this one: it preserved court access for injunctive relief and specific performance generally, while Section 10.2(a)(2) goes further, preserving an entire category of subject matter—intellectual-property enforcement—for judicial resolution.

13

### D. The Vouch Entity Defendants Cannot Enforce the Arbitration Provision, and No Equitable Doctrine Can Enlarge Arbitration Rights Beyond the Agreement.

Even if the Court were to find that some of Plaintiffs' claims should be arbitrated, only those claims by Corgi against Defendants Wulff and Augmenta would be subject to arbitration. The Arbitration Provision is a contract between the website user—"you"—and the "Company Parties." Ex. A at 5 (§ 10.2). The only Defendants alleged to have used the Site are Wulff and Augmenta. D.I. 24 ¶¶ 28–29. The Vouch Entity Defendants are strangers to the Terms. So too is TRRG. TRRG never visited the Site, never accepted the Terms, and signed nothing. TRRG is the entity that underwrote, issued, and carried the risk on the policy at issue, and its claims arise from Defendants' fraudulent procurement and the taking of CORG policy forms that it owns—not from any website contract. D.I. 24 ¶¶ 5, 32–33. Defendants' only estoppel theory—that TRRG once pleaded a since-withdrawn breach-of-Terms claim, D.I. 19 at 3 n.5—fails because an amended complaint supersedes the original, whose withdrawn allegations are not binding judicial admissions, *West Run*, 712 F.3d at 171–73, and because none of TRRG's operative claims rely on the Terms. Alternatively, if TRRG is a "Company Party" under the Terms—as Defendants themselves insist, D.I. 19 at 3—then Section 10.2(a)(2) expressly preserves TRRG's right, as a Company Party, to "seek equitable relief in court" for the misuse of its intellectual property, including the CORG policy forms TRRG owns. D.I. 24 ¶ 5. On Defendants' own framing, there is no version of this contract under which TRRG's claims belong in arbitration.

The Vouch Entity Defendants nevertheless seek to enforce the Arbitration Provision against Corgi and TRRG, the question of which turns on Delaware law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). Under Defendants' own authority, equitable estoppel permits a non-signatory to compel arbitration in two scenarios: (1) where "the signatory to a

14

written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory," or (2) where the signatory alleges "substantially interdependent and concerted misconduct" by the non-signatory and a signatory that is intimately founded in and intertwined with the obligations imposed by the agreement. *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at \*4–5 (Del. Ch. Aug. 22, 2006). The Third Circuit applies non-signatory estoppel just as narrowly, refusing enforcement where the plaintiff's claims are removed from the agreement containing the arbitration clause and do not seek a direct benefit under it. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 202 (3d Cir. 2001); *White v. Sunoco, Inc.*, 870 F.3d 257, 263–68 (3d Cir. 2017). Neither *Wilcox* scenario applies. Plaintiffs' claims are independent of the Terms. The Terms are identified as one of several measures taken to protect trade secrets, D.I. 24 ¶ 27, but that does not mean that Plaintiffs "rely on the terms of the written agreement" to impose liability. Relatedly, none of the "concerted misconduct" Plaintiffs allege is founded on the Terms or obligations imposed by the Terms. All of Plaintiffs' claims exist independent of the Terms.

Defendants' alter-ego theory fares no better. Plaintiffs do not concede that Augmenta is the Vouch Defendants' alter ego. Rather, Plaintiffs allege alter ego liability as an alternative, in accordance with Federal Rule of Civil Procedure 8(d)(2)-(3). The Court need not resolve the foregoing, however, because Defendants' non-signatory theories share a fatal flaw: a non-signatory seeking to enforce a signatory's agreement can acquire, at most, the arbitration rights that agreement confers. Here, the Arbitration Provision excludes this action as to the actual parties to it. Accordingly, the Vouch Entity Defendants, as non-signatories, stand in the shoes of Wulff and Augmenta. The carve-out applies to everyone, or it applies to no one; either way, this action stays in this Court.

15

### E. Defendants' request for fees and costs should be denied.

Like the substance of the motion, Defendants' demand for their attorneys' fees, D.I. 30 at 9-10, fails.  Section 10.2(g) permits fee recovery only by "the party that obtains an order compelling arbitration." Ex. A at 8 (§ 10.2(g)).  Because the motion should be denied, no fees are available.[3]  Moreover, the informal dispute resolution provision Defendants accuse Plaintiffs of "violat[ing]" applies, by its terms, "before either party commences arbitration against the other." Ex. A at 6 (§ 10.2(b)). Plaintiffs never commenced arbitration. They filed this action in accordance with the carve-out set forth in Section 10.2(b), which imposes no pre-suit conference requirement at all.  Ms. Wulff's declaration, D.I. 20, therefore proves nothing material.

Finally, Defendants' fee demand asks this Court to exercise the very authority their delegation argument denies it.  Section 10.2(d)(3) commits "all Disputes about whether either party has satisfied any condition precedent to arbitration" to "a court of competent jurisdiction and not . . . an arbitrator." Ex. A at 7.  Defendants cannot invoke the Court's reserved authority under Section 10.2(d)(3) to adjudicate the condition-precedent question when it serves their fee request, while simultaneously insisting the Court is powerless to construe the same Section 10.2 when its text defeats their motion. The Terms constitute one contract; Defendants must take them as a whole.

## V.    CONCLUSION

The Terms provide that any party "may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as . . . trade secrets)."  Plaintiffs did exactly that. The Court should deny Defendants' Motion to Compel Arbitration and Defendants' corresponding

---

[3] Plaintiffs reserve their own rights under the same provision's final sentence, which awards fees to "[t]he prevailing party in any court action relating to whether either party has satisfied any condition precedent to arbitration." *Id.*

16

request for fees and costs.  In the alternative, and at a minimum, the Court should retain all claims and issues necessary to adjudicate the equitable trade secret relief the carve-out preserves, retain Counts VII through X, deny fees, and refer only any discrete, severable issue the Court determines is subject to arbitration.

Dated: July 31, 2026                    **McCarter & English, LLP**

                                        */s/ Travis J. Ferguson*_____
                                        Travis J. Ferguson (No. 6029)
                                        Amy R. Harriman (No. 7602)
                                        Renaissance Centre
                                        405 North King St., 8th Floor
                                        Wilmington, Delaware 19801
                                        (t) 302-984-6300
                                        (e) tferguson@mccarter.com
                                            aharriman@mccarter.com

                                        *Counsel for Plaintiffs*
                                        *Technology Risk Retention Group, Inc.*
                                        *and Corgi Insurance Services, Inc.*