**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

TECHNOLOGY RISK RETENTION GROUP, INC., an Arizona corporation, CORGI INSURANCE SERVICES, INC., a Delaware corporation,

Plaintiffs,

v.

VOUCH, INC., a Delaware corporation, VOUCH SPECIALTY INSURANCE SERVICES, LLC, a Delaware limited liability company, VOUCH US INSURANCE SERVICES HOLDINGS, LLC, a Delaware limited liability company, VOUCH RISK MANAGEMENT SERVICES, LLC, a Delaware limited liability company, KELLY WULFF, an individual, AUGMENTA ADVISORY, LLC, a Delaware limited liability company,

Defendants.

C.A. No. 1:26-cv-00426-RGA

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION**

August 21, 2026

OF COUNSEL:

KEKER, VAN NEST & PETERS LLP
Warren A. Braunig
Cody Gray
Jacqueline Concilla
Michaela Firmage
633 Battery Street
San Francisco, CA 94111
(415) 391-5400
wbraunig@keker.com
cgray@keker.com
jconcilla@keker.com
mfirmage@keker.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Defendants Vouch, Inc., Vouch Specialty Insurance Services, LLC, Vouch US Insurance Services Holdings, LLC, Vouch Risk Management Services, LLC, Kelly Wulff, and Augmenta Advisory, LLC*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION AND SUMMARY OF ARGUMENT ....................1

II. ARGUMENT ....................2

A. Corgi's Claims Fall Within the Scope of the Arbitration Agreement. ....................2

B. The Equitable Relief Carve-Out Does Not Exempt This Action From Arbitration. ....................4

C. Even If There Were Ambiguity, the Delegation Clause Assigns Disputes About Interpretation of the Arbitration Agreement to the Arbitrator. ....................7

D. All Defendants May Compel Arbitration. ....................9

E. Defendants Should be Granted Fees and Costs. ....................9

III. CONCLUSION ....................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
935 F.3d 274 (5th Cir. 2019) ....................5, 7

*Comedy Club, Inc. v. Improv W. Assocs.*,
553 F.3d 1277 (9th Cir. 2009) ....................5, 6

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ....................5

*E. Hedinger AG v. Brainwave Sci, LLC*,
363 F. Supp. 3d 499 (D. Del. 2019)....................2

*GateGuard, Inc. v. MVI Sys. LLC*,
2021 WL 4443256 (S.D.N.Y. Sept. 28, 2021)....................2, 5, 6

*Henry Schein Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019)....................5, 7

*Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*,
247 F.3d 44 (3d Cir. 2001)....................2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................4, 9

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................7

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................9

**State Cases**

*James & Jackson, LLC v. Willie Gary, LLC*,
906 A.2d 76 (Del. 2006) ....................8

## I. INTRODUCTION AND SUMMARY OF ARGUMENT[1]

This case should be compelled to arbitration for three inescapable reasons: (1) every claim "relat[es]" to the use of Corgi's Site and Services and thus falls within the scope of the Arbitration Agreement; (2) Section 10.2(a)(2) preserves only the right to seek preliminary "relief" in court and does not carve out particular claims from arbitration; and (3) the contract provides that the arbitrator has "exclusive" authority over issues of "applicability" and "interpretation," rendering any dispute about the contract's application a question for the arbitrator. Nothing in Corgi's opposition disturbs these conclusions.

*First*, Corgi's contention that its claims "do not relate in any way to the Site" borders on absurd. D.I. 32 ("Opp.") at 6. Corgi's own brief states the opposite. It proclaims that Ms. Wulff and Augmenta are "alleged to have used the Site" to obtain proprietary information, *id.* at 14 (citing D.I. 24 ("FAC") ¶¶ 28–29), and insists that "every count concerns" that same website-based misappropriation scheme, Opp. at 8. The "factual underpinning" of every claim in the complaint is unmistakably the alleged access and use of Corgi's Site and its Services to obtain and misuse Corgi's proprietary information. Try as it might, Corgi cannot run from its own allegations to escape the arbitration provision.

*Second*, Section 10.2(a)(2) does not "preserv[e] an entire category of subject matter—intellectual-property enforcement—for judicial resolution," Opp. at 13 n.2, as Corgi contends. It doesn't carve out "claims," "disputes," "entire categories," or "actions" at all. Nor does it say that "claims involving IP-enforcement" shall be litigated in court. It provides that a party may "seek" a specific form of "*relief*"—equitable relief—in court for IP misuse.

[1] Unless otherwise noted, internal quotation marks, alterations, and citations have been omitted and emphases have been added.

Courts have consistently read similar provisions to preserve only interim equitable relief in aid of arbitration. *GateGuard, Inc. v. MVI Sys. LLC*, 2021 WL 4443256, at *6–7 (S.D.N.Y. Sept. 28, 2021). In any event, virtually every claim here seeks "damages." FAC (Count I-X) ¶¶ 47, 53, 59, 68, 81, 94, 102. Nothing in the Agreement permits Corgi to litigate its damages claims outside of arbitration.

*Third*, Corgi insists that the broad delegation clause "never attaches," based on a tortured reading of the Agreement. Opp. at 12. But even that question presents a dispute about the "interpretation, applicability, [or] enforceability" of the contract—which the Agreement expressly delegates to the arbitrator. D.I. 19, Ex. A at 7 (§ 10.2(d)). And there is nothing contradictory in saying that arbitrability is for the arbitrator and the condition-precedent issue is a question for this Court. That is precisely what the contract says.

For these reasons, and those stated herein, the Court should compel arbitration of all claims against all defendants and stay this action pending arbitration.

## II. ARGUMENT

### A. Corgi's Claims Fall Within the Scope of the Arbitration Agreement.

Corgi's Arbitration clause covers "any dispute … relating in any way to the Site, the services offered on the Site ('the Services') or these Terms." D.I. 19, Ex. A at 5 (§ 10.2(a)). Courts consider such language to indicate a "broad" agreement to arbitrate. *See E. Hedinger AG v. Brainwave Sci, LLC*, 363 F. Supp. 3d 499, 508–09. "To determine whether a claim falls within the scope of an arbitration agreement, the focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001).

Corgi asserts that its claims "do not relate in any way to the Site or the services offered by Corgi on the Site," Opp. at 6, but its complaint belies that contention. Counts I

through VI fall outside the Arbitration Agreement, Corgi says, because they "are grounded in Defendants' scheme to obtain and misuse [Corgi's] trade secret and proprietary information." *Id.* at 7. But that information was allegedly "obtain[ed]" by accessing and using "Corgi's website"—aka its underwriting "platform"—in purported violation of the Terms. FAC ¶¶ 1–2; *see also id.* ("Wulff did not merely browse Corgi's website for information…"). Even a cursory review of the complaint reveals that Corgi's case rests on the allegation that Defendants accessed Corgi's website and navigated its "full underwriting flow" (*i.e.*, its "Site"); submitted an application through its platform and obtained a policy generated by its system (*i.e.*, its "Services"); and extracted proprietary information embedded in those online services. FAC ¶¶ 2, 28–35. Those "factual underpinnings" place each and every claim within the scope of the Arbitration Agreement.

As to Counts VII–X, Corgi avers that Vouch "used the confidential and proprietary information it misappropriated [through Augmenta's access to Corgi's website] to support deceptive trade practices." FAC ¶ 4. And Corgi's brief goes on to contend that "*every* count," including Counts VII–X, "concerns the misuse of Plaintiffs' intellectual property," Opp. at 8—*i.e.*, the proprietary information Corgi alleges Defendants obtained by accessing Corgi's website in violation of the Terms. Corgi now tries to recast its own allegations as mere "suspicion," *id.* at 6–7, but a plaintiff cannot disclaim the factual allegations in its own complaint. The deceptive advertising claims are all inextricably linked to the same website-based dispute that the Arbitration Agreement governs. Those claims, too, fall within the scope of the Arbitration Agreement.

The applicability of the Arbitration Agreement to Corgi's claims is reinforced by the number of times Corgi's FAC invokes the Terms of Use that contain the Agreement. The

FAC alleges that Corgi's information qualifies as a trade secret in part based on "acceptance of binding Terms of Use" and "express prohibitions against using the platform for competitive purposes (Section 2.2(c))." FAC ¶ 27(a)–(b). The declaratory relief claim (Count VI) expressly invokes the Terms. *Id.* ¶ 70. And Corgi expressly alleges that Augmenta "agreed to the Terms and Conditions of Corgi's platform." *Id.* ¶ 29(j). Corgi drafted the Terms, alleges they are binding, relies on them to assert its claims, and alleges Defendants accepted them. Corgi does not get to have it both ways: it may not invoke the contract to impose liability while ignoring the dispute-resolution provision that contract contains.[2]

### B. The Equitable Relief Carve-Out Does Not Exempt This Action From Arbitration.

As a threshold matter, Corgi's assertion that Defendants' "two briefs never confront[ed]" the so-called equitable relief "carve-out," Opp. at 1, is false. The Opening Brief addressed Section 10.2(a)(2) directly, explaining that the provision "does not exempt any claims from arbitration." D.I. 19 at 8–9 (citing authority). Corgi ultimately concedes that Defendants did in fact address the carve-out, arguing that the "only answer to the carve-out is buried in a single paragraph." Opp. at 9. Defendants cannot have simultaneously "never confront[ed]" the carve-out and offered an "answer" to it.

In any event, Corgi's attempt to use the equitable relief carve-out to exempt its claims from arbitration fails. The carve-out draws a critical distinction between disputes and relief. Section 10.2(a)(2) provides that a party "may seek equitable relief in court for infringement or other misuse of intellectual property rights." D.I. 19, Ex. A at 5 (§ 10.2(a)). It does not

[2] Even if there were claims that fell outside the scope of the arbitration clause (there are not), Corgi does not dispute that any such claims would be stayed pending arbitration of the remaining claims. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20–21 (1983).

carve out "disputes," "claims," or "actions" relating to intellectual property. The object of the word "seek" is "relief," not an entire cause of action. And if the drafters had intended to exempt entire categories of disputes or claims from arbitration, they knew how to say so. The first part of the same sentence broadly requires any "dispute" relating to the Site, Services, or Terms to be arbitrated. The small-claims carve-out in Section 10.2(a)(1) also demonstrates the point: it allows parties to "assert individualized *claims* in small claims court if the *claims* qualify." That is claim-based language. Section 10.2(a)(2), by contrast, is relief-based language. It preserves access to an interim judicial remedy in aid of arbitration; it does not exempt from arbitration an entire lawsuit that seeks "damages" on virtually every count.

*Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274 (5th Cir. 2019), on which Corgi principally relies, is easily distinguishable. The carve-out in *Archer & White* exempted "*actions* seeking injunctive relief and *disputes* related to trademarks, trade secrets, or other intellectual property." *Id*. at 277. The same language appeared in *Henry Schein Inc. v. Archer and White Sales, Inc*., 586 U.S. 63, 65 (2019). That is dispute-and-claim language: it carves out entire categories of "actions" and "disputes" from arbitration. Section 10.2(a)(2) uses fundamentally different language. It merely permits a party to "seek equitable relief" in court. Courts have consistently read provisions like Section 10.2(a)(2) to preserve only interim equitable relief in aid of arbitration. *See, e.g.*, *GateGuard,* 2021 WL 4443256, at *6–7; *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484–85 (9th Cir. 2020); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009).

*GateGuard* is directly on point. There, the arbitration provision required that "any dispute, claim or controversy" be settled by arbitration, "except that GateGuard alone retains the right to seek injunctive or other equitable relief in a court of competent jurisdiction to

prevent the actual or threatened infringement, misappropriation or violation of … [its] trade secrets, patents, or other Intellectual Property rights." 2021 WL 4443256 at *6. The court held that this language did not create a carve-out. "Courts have typically only found an equitable relief provision to serve as a carve-out when the provision says that all 'claims' or 'actions' seeking equitable relief are exempted from arbitration." *Id.* (collecting cases). "But when, as here, that language is lacking, an equitable relief provision does not 'transform[ ] arbitrable claims into nonarbitrable ones depending on the form of relief prayed for.'" *Id.* at *7. Instead, it "simply confirm[s] an already extant, independent legal right to make injunctive relief in judicial courts of proper jurisdiction available to the parties in aid of arbitration." *Id.*; *see also Comedy Club*, 553 F.3d at 1285–86 (holding that a similar provision did not carve out claims but merely allowed parties to "seek temporary equitable remedies . . . while arbitration was ongoing"). The *GateGuard* court also observed the absurdity of splitting a single claim between a court (for the equitable remedy) and an arbitrator (for the legal remedy), which "could yield differing results for the same claim." 2021 WL 4443256, at *8. The courts in *GateGuard* and *Comedy Club* read these equitable-relief provisions not to take authority from the arbitrator but to provide parties a mechanism for interim relief when, for example, a risk of imminent harm exists and an arbitrator has not yet been selected. Section 10.2(a)(2) uses the same language and should be read the same way.[3]

Corgi's tortured reading of the equitable-relief language to exempt from arbitration virtually any claim that includes a request for injunctive relief would smash an enormous

[3] Notably, Corgi has not sought interim relief in the form of a temporary restraining order or preliminary injunction. Nor could it. Corgi faces no irreparable harm and is quite unlikely to prevail on the merits.

hole in an Agreement that provides that "any dispute" relating to the Site or Services should be arbitrated. Virtually every complaint includes a request for injunctive relief. Were that enough to remove trade-secret, fraud, conspiracy, false-advertising, tortious interference, and other various tort claims from arbitration, there would be almost nothing left that could be arbitrated. Corgi would have turned the Arbitration Agreement on its head.

### C. Even If There Were Ambiguity, the Delegation Clause Assigns Disputes About Interpretation of the Arbitration Agreement to the Arbitrator.

The carve-out does not apply to any claims in this case. But to the extent the Court perceives any ambiguity in its application, the contractual delegation clause independently requires that question to be sent to arbitration. Section 10.2(d) of the Terms provides that the arbitrator has "exclusive authority to resolve all disputes subject to arbitration hereunder including, without limitation, any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement or any portion of the Arbitration Agreement." D.I. 19, Ex. A at 7 (§ 10.2(d)). That language is an express delegation clause that independently satisfies the "clear and unmistakable" standard. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010). Under *Henry Schein*, when parties have agreed to such a clause, "a court possesses no power to decide the arbitrability issue"—even if the court believes the argument is "wholly groundless." 586 U.S. at 68.

Corgi's reductionist argument also fails on the merits. Corgi contends the language "subject to arbitration hereunder" makes the delegation clause itself subject to Section 10.2(a)'s carve-out. Opp. at 11–12. But Section 10.2(d) does not stop at the "subject to" phrase. The sentence delegates to an arbitrator "any dispute related to the interpretation, applicability, enforceability, or formation" of the Agreement, then enumerates four discrete issues that courts, not arbitrators, must decide. The scope of Section 10.2(a)(2)'s equitable-

relief provision is not one of them. Disputes about that provision are reserved for the arbitrator because they bear on "interpretation" and "applicability." Adopting Corgi's reading—and requiring a court to first decide every scope question—would render the subsequent language meaningless.

Corgi's reliance on *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76 (Del. 2006), is misplaced. *Willie Gary* addressed whether incorporation of arbitral rules alone constitutes "clear and unmistakable" evidence of delegation—and held it does so where "the arbitration clause generally provides for arbitration of all disputes." *Id.* at 80–81. That holding does not apply here because Defendants do not rely solely on incorporation of the JAMS rules; the Terms contain an express delegation clause in Section 10.2(d) that was not present in *Willie Gary* and independently dictates that disputes are delegated to the arbitrator.

But even under *Willie Gary*'s framework for delegation, the result is the same. The arbitration clause in *Willie Gary* provided that "in addition to any other remedy . . . at law or in equity," nonbreaching members "shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions hereof *in any action instituted in any court* of the United States or any state thereof." 906 A.2d at 79–81. That language authorized nonbreaching members to institute *actions* for injunctive relief and specific performance on any provision of the agreement—which the court held prevented the clause from "generally" referring disputes to arbitration. *Id.* at 81. Section 10.2(a)(2) is materially different: it sends "any *dispute*" to the arbitrator and only permits a party to "seek" limited "equitable *relief* in court." D.I. 19, Ex. A at 5. Thus, unlike in *Willie Gary*, the incorporation of the JAMS rules independently confirms delegation.

Finally, even if some sliver of this case fell outside the Arbitration Agreement (it does not), the remedy would be to sever and stay that claim, with the rest of the action proceeding in arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (FAA "compels" a stay when any claim is referred to arbitration); *Moses H. Cone*, 460 U.S. at 20–21.

**D. All Defendants May Compel Arbitration.**

Corgi's argument to prevent non-signatories from relying on the Arbitration Agreement fails for the reasons set forth in the Opening Brief (§ V.A.4) and Supplemental Brief (§ D). The non-signatories may invoke the Arbitration Agreement under both alter ego and equitable estoppel grounds. Corgi now says it "do[es] not concede" that Augmenta is the alter ego of the Vouch Defendants. Opp. at 15. But Corgi affirmatively pleaded that fact. FAC ¶ 15 ("Augmenta Advisory is the alter ego of the Vouch Defendants."). A plaintiff cannot disclaim its own allegations when they become inconvenient. If Augmenta is the Vouch Defendants' alter ego—as Corgi expressly alleges—then the Vouch Defendants stand in Augmenta's shoes for purposes of the Arbitration Agreement and may compel to arbitration the claims against them.

Equitable estoppel independently permits all Defendants to compel arbitration. Corgi's claims are "inextricably intertwined" with the Terms—every claim arises from alleged access to and use of the Terms-governed Site and Services. Corgi may not invoke the Terms to establish its claims (alleging Defendants "agreed to the Terms and Conditions of Corgi's platform," FAC ¶ 29(j)) while rejecting the Terms' Arbitration Agreement.

**E. Defendants Should be Granted Fees and Costs.**

As noted in the opening brief, Defendants should be granted their attorneys' fees and costs on two separate grounds. *First*, if the Court compels arbitration, the Agreement requires Corgi to pay Defendants' fees and costs (*see* D.I. 19, Ex. A § 10.2(g)), a point Corgi does not

contest. *Second*, if the Court finds that Corgi failed to comply with the Informal Dispute Resolution ("IDR") provision (*id.* § 10.2(b)), Defendants are once again entitled to their fees and costs. *Id.* § 10.2(g). Corgi's arguments to avoid such a finding are meritless.

Corgi posits that the IDR provision applies only "before either party commences arbitration" and that it never "commenced arbitration." Opp. at 16. But Corgi's decision to ignore its own Arbitration Agreement cannot excuse its conduct, or its non-compliance with the contract's prerequisites. A party cannot avoid a contractual condition precedent simply by pretending the contract does not exist. Corgi's suggestion that Defendants are engaged in gamesmanship by asking this Court to decide the condition-precedent question while sending the rest of the disputes to arbitration, Opp. at 16, is baseless. That is exactly what the contract contemplates. *See* D.I. 19, Ex. A at 7 (§ 10.2(d)(3)). The Court should grant fees and costs under both clauses of Section 10.2(g).

## III. CONCLUSION

For the foregoing reasons, and for the reasons stated in the Opening Brief (D.I. 19) and Supplemental Brief (D.I. 30), the Court should: (1) compel arbitration of all claims against all Defendants; (2) stay this action pending arbitration; (3) find that Corgi did not comply with the Informal Dispute Resolution requirement of Section 10.2(b); (4) award Defendants their reasonable attorneys' fees and costs; and (5) permit Defendants to file a fee petition within twenty-one (21) days of an order compelling arbitration.

Respectfully submitted,

Dated: August 21, 2026

YOUNG, CONAWAY, STARGATT & TAYLOR LLP

/s/ Robert M. Vrana

Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Defendants Vouch, Inc. Vouch Specialty Insurance Services LLC, Vouch US Insurance Services Holdings LLC, Vouch Risk Management Services LLC, Kelly Wulff and Augmenta Advisory LLC*

*Of Counsel:*

KEKER, VAN NEST & PETERS LLP
Warren A. Braunig
Cody Gray
Jacqueline Concilla
Michaela M. Firmage
633 Battery Street
San Francisco, California 94111
(415) 391-5400
wbraunig@keker.com
cgray@keker.com
jconcilla@keker.com
mfirmage@keker.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 21, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**
Travis J. Ferguson
Amy R. Harriman
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King St., 8th Floor
Wilmington, DE 19801
tferguson@mccarter.com
aharriman@mccarter.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Robert M. Vrana*
Robert M. Vrana (No. 5666)
Parks L. Kingery (No. 7416)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
rvrana@ycst.com
pkingery@ycst.com

*Attorneys for Defendants Vouch, Inc., Vouch Specialty Insurance Services, LLC, Vouch US Insurance Services Holdings, LLC, Vouch Risk Management Services, LLC, Kelly Wulff, and Augmenta Advisory, LLC*